IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RYAN HILL,                        }
                                  }
        Plaintiff,                }
                                  }        CIVIL ACTION NO.
v.                                }
                                  }        00-AR-1590-S
BLUE CROSS BLUE SHIELD OF         }
ALABAMA,                          }
                                  }
        Defendant.                }

**MEMORANDUM OPINION**

This case is in some respects similar to *Linda B. Waldrop, et al., v. David H. Koplon*, et al., CV-97-AR-1565-S, a case which this court certified for an interlocutory appeal to the Eleventh Circuit from this court's refusal to remand the case which had been removed from a state court on the basis of alleged ERISA superpreemption. In 1997 the Eleventh Circuit declined to accept the proffered appeal. That was then. This is now. There has been a lot of water over the ERISA dam in the last three years. Maybe the time is right. Maybe the issue is ripe.

This court is now faced with another motion to remand a case originally brought in a state court, this time, by Ryan Hill. He does not invoke ERISA. He simply alleges that Blue Cross Blue Shield of Alabama, an insurance company, committed the Alabama tort of  bad faith refusal to pay what Hill claims is a sum clearly due

1



him under the terms of his disability insurance policy.   The coverage provided Hill by Blue Cross is admittedly pursuant to an ERISA-governed employee benefits plan.   The state law claim which defendants claimed was ERISA preempted in *Waldrop v. Koplon* was a tort different in kind from the tort here alleged by Hill.  Waldrop claimed fraud, a tort that provides no colorable basis upon which a plaintiff could claim an exception from ERISA preemption under ERISA's so-called "savings clause."   Here, Hill  unapologetically seeks a federal judicial recognition of the Alabama claim of bad faith as an exception to ERISA superpreemption, arguing that he can proceed under state law because of the "savings clause" and/or  as a result of the reverse preemption provided by the McCarran-Ferguson Act.   This very issue was recently solidly presented to another judge of the Northern District of Alabama in *Carolyn Christian v. Continental Casualty Company*, CV-00-PT-0461-M. That case was settled, eliminating a possible vehicle for obtaining an expression by the Eleventh Circuit on the issues.   A copy of plaintiff's brief in *Christian* is attached hereto as Exhibit "A."

*Lewis v. Aetna U. S. Healthcare*, 78 F. Supp. 2d 1202 (N.D. Okla. 1999), was decided by Judge Holmes of the Northern District of Oklahoma on October 20, 1999.  If he is correct in his rendition of the law of Oklahoma in the ERISA context, then Hill's motion to remand is due to be granted.   The pertinent law of Alabama cannot

be distinguished from the pertinent law of Oklahoma.  On November 1, 1999, eleven days after *Lewis* was decided, Chief Judge Match of the District of Colorado carried Judge Holmes' idea to Colorado. A copy of his short opinion and order in *Hall v UNUM Life Insurance Company of America*, CV-97-M-1828, is attached hereto as Exhibit "B."  The laws of Oklahoma and of Colorado, insofar as they involve the preemption issue in the instant case, are identical to the law of Alabama.

Judges Holmes and Match make what this court thinks is a persuasive argument.  To reach the conclusion they reached requires only that the tort of bad faith be limited to the denial of **insurance** benefits, so that the cause of action under state law, whether statutory or judge-made, constitutes a regulation of insurance.  Judges Holmes' and Match's rationale does not require that anyone agree with Judge Young of the  District of Massachusetts, who in *Andrews-Clarke v. Travelers Insurance Co.*, 984 F. Supp. 49 (N.D. Mass. 1997), concludes that "the practical effect of ERISA ... is to immunize [insurers] from any potential liability for the consequences of their denial of benefits." Judge Young's view is, of course, shared by other jurists, but it is not necessary to agree with him in order to find that Hill's case against Blue Cross is not ERISA superpreempted.

It would have been nice if the Supreme Court had granted the petition for certiorari that was filed in *Nelson v. UNUM Life*

3

*Insurance Company of America*, Supreme Court No. 99-1503, a case arising in California and virtually identical on its facts to the Oklahoma and Colorado cases discussed above.  A copy of the petition in *Nelson*, except for its appendices, is attached hereto as Exhibit "C."  Although the Supreme Court did not grant certiorari in *Nelson* and thus has not provided answers to the question addressed by Judges Holmes and Match, there is reason to believe that a trend was set by *UNUM Life Insurance Company v. Ward*, 119 S.Ct. 1380 (1999), and that the courts are waking up to the results of uncontrolled ERISA superpreemption.  Other indicators that the tide of ERISA preemption is receding can be detected in *Pegram v. Herdrich*, 120 S.Ct. 2130 (2000), and in *Corporate Health Insurance, Inc. v. Texas Department of Insurance*, ___ F.3d ___, 2000 W.L. 792345 (5th Cir. 2000).

In its brief in the instant case, Blue Cross expressly quarrels with *Lewis v. Aetna*, as it must, but proceeds to congratulate Congress on the fair treatment ERISA affords plan beneficiaries.  It argues that besides being able to sue for benefits "ERISA plan participants generally may also obtain relief that would typically be available in equity, such as injunction, mandamus, and restitution..."  These forms of relief are worth little to someone who, in theory, has been deliberately denied a benefit without any legitimate basis for the denial.

If this court should grant Hill's motion to remand by a

4

finding that the district judges in Oklahoma and Colorado correctly predict what the Eleventh Circuit will do, Blue Cross would not be able to obtain a review of that order. This is unfair when the question is close. Because this court cannot promise what the answer of the Eleventh Circuit will be, a denial of Hill's motion, accompanied by a certification for interlocutory review under 28 U.S.C. § 1292(b), will provide a procedure, if the Eleventh Circuit will use it, for answering one way or another the serious question raised in this case.

If, within 14 days, Hill requests of this court a certification pursuant to 28 U.S.C. 1292(b), the court will grant his request. Meanwhile, Hill's motion to remand will be denied by separate order.

DONE this ____ day of July, 2000.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

CAROLYN CHRISTIAN,                          *
                                            *
        Plaintiff,                          *
                                            *
v.                                          *       Civil Action No. CV-2000-PT-461-M
                                            *
CONTINENTAL CASUALTY COMPANY,               *
                                            *
        Defendant                           *


## PLAINTIFF'S BRIEF IN SUPPORT OF ALLOWING A BAD FAITH CLAIM

Plaintiff's claim for bad faith should be allowed by amendment because the claim is based on both the Alabama Bad Faith Statute, Al. St. 27-12-24[1], which is a statute which regulates insurance and the "Bad Faith Denial of Insurance Claims" a cause of action recognized by the Alabama Supreme Court. The McCarran-Ferguson Act[3] reserves regulation of insurance

---

[1] "§27-12-24  Refusal of insurer to pay or settle claims.

No insurer shall, without just cause, refuse to pay or settle claims arising under coverages provided by its policies in this state and with such as to indicate a general business practice in this state, which general business practice is evidenced by:

(1)  A substantial increase in the number of complaints against the insurer received by the insurance department;
(2)  A substantial increase in the number of lawsuits against the insurer or its insureds by claimants; and
(3)  Other relevant evidence.

[2] "(a)  The purpose of this chapter is to regulate trade practices in the business of insurance in accordance with the intent of congress as expressed in the Insurance Regulation Act by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." Insurance Trade Practices Act Al. St. 27-12-1.

[3] The McCarran-Ferguson Act provides, in relevant part:  (a) "The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which related to the regulation or taxation of such business  (b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." 15 U.S.C  §1012(a & b).

EXHIBIT "A"

to the states and with regard to Al. St. 27-12-24 reverses the ERISA preemption, allowing Plaintiff's bad faith claim to proceed under Alabama state law.  The "Bad Faith Denial of an Insurance Claim" claim is also exempted form preemption by the Saving Clause[4] of ERISA 29 U.S.C. 1144(b)(2)(A) which provides:

> "Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any state which regulates insurance, banking or securities."

## McCarran-Ferguson Act

State causes of action based on state statute may be exempted from ERISA or reverse preempted by the McCarran Ferguson Act which provides:  "No act of Congress shall be construed to invalidate, impair, or supersede any law <u>enacted by any state for the purpose of regulating the business of insurance</u>." 15 U.S.C. §1012.

The analysis under the savings clause of ERISA is identical to analysis under McCarran Ferguson because the test is whether the law "regulates the business of insurance."  The McCarran Ferguson analysis includes only statutes enacted by states while the ERISA savings clause includes statutes as well as decision law.

> "Decisional law that 'regulates insurance' may fall under the saving clause.  The saving clause, §514(b)(2)(A), covers 'any law of any State.'  For purposes of §514, '[t]he term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State.' " 29 U.S.C. §1144(c)(1) and (2).

To determine whether a "bad faith denial of insurance benefits" cause of action is exempted from ERISA preemption under the McCarran Ferguson Act or the ERISA saving

---

[4] The benefits in this case are provided by insurance. The savings clause of ERISA has no application to a self-funded insurance plan because of the application of the deemer clause of 29 U.S.C.(b)(2)(B).  [n]either an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank trust company or investment company or to be engaged in the business of insurance or banking for purposes of any law of any state purporting to regulate insurance companies, insurance contracts, banks, trust companies or investment companies.  In *FMC Corp. v. Holliday*, 498 U.S. 52, 61-62 (1990), the Supreme Court interpreted the deemer clause to exempt self-funded ERISA plan from state laws that regulate insurance within the meaning of the saving clause.  The deemer clause has no application to this case.

clause, the state cause of action for bad faith denial of insurance claim must be analyzed to determine if it is based on law 'which regulates insurance.'

The lead case on the subject, *Pilot Life Insurance Co. v. Dedeaux*, held that Mississippi's *common law* bad faith cause of action was preempted by ERISA. 107 S.Ct. 1549, 1553 (1987). In *Pilot Life*, the U.S. Supreme Court carefully analyzed Mississippi's *common law* bad faith cause of action in determining that the claim was preempted by ERISA and *not exempted* by the ERISA savings clause because the cause of action was not based on a "law regulating insurance":

> "As early as 1915 the Mississippi Supreme Court had recognized that punitive damages were available in a contract case when 'the act or omission constituting the breach of the contract amounts also the commission of a tort.' See Hood v. Moffett. 109 Miss. 757, 767, 69 So. 664, 666 (1915) (involving a physician's breach of a contract to attend to a woman at her approaching 'accouchement'). In American Railway Express Co. v. Bailey, 142 Miss. 622, 631, 107 So. 761, 763 (1926), a case involving a failure of a finance company to deliver to the plaintiff the correct amount of money cabled to the plaintiff through the finance company's offices. the Mississippi Supreme Court explained that punitive damages could be available when the breach of contract was 'attended by some intentional wrong, insult, abuse, or gross negligence, which amounts to an independent tort.' In Standard Life Insurance Co. v. Veal, 354 So.2d 239 (Miss. 1977), the Mississippi Supreme Court, citing D.L. Fair Lumber Co. v. Weems, 196 Miss. 201, 16 So.2d 770 (1944) (breach of contract was accompanied by 'the breaking down and destruction of another's fence').
>
> Even though the Mississippi Supreme Court has identified its law of bad faith with the insurance industry, the roots of this law are firmly planted in the general principles of Mississippi tort and contract law. Any breach of contract, and not merely breach of an insurance contract, may lead to liability for punitive damages under Mississippi law."

Id. 1554.

## UNUM Signals A Shift Toward State Regulation And Away From Preemption

The second leading case on the subject is *UNUM Life Insurance Company of America v. Ward*, 119 S.Ct. 1380 (1999), where the Supreme Court unanimously ruled that California's

"Notice Prejudice Rule"[5] regulated insurance within the meaning of ERISA's saving clause and thus escaped preemption by ERISA:

> "We next consider the criteria used to determine whether a state law regulates the 'business of insurance' within the meaning of the McCarran Ferguson Act. Preliminarily, we reject UNUM's assertion that a state regulation must satisfy all three McCarran Ferguson factors in order to 'regulate insurance' under ERISA's saving clause. Our precedent is more supple than UNUM conceives it to be. We have indicated that the McCarran Ferguson factors are 'considerations [to be] weighed' in determining whether a state law regulates insurance, Pilot Life, 481 U.S., at 49, 107 S.Ct. 1549, and that '[n]one of these criteria is necessarily determinative in itself,' Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed. 2d 647 (1982). In Metropolitan Life, the case in which we first used the McCarran Ferguson formulation to assess whether a state law 'regulates insurance' for purposes of ERISA's saving clause, we called the McCarran Ferguson factors 'relevant'; we did not describe them as 'required.' See 471 U.S., at 743, 105 S.Ct. 2380; O'Connor v. UNUM Life Ins. Co. of America, 146 F.3d 959, 963 (C.A.D.C. 1998) ('That the factors are merely "relevant" suggests that they need not all point in the same direction, else they would be "required.").

Id. at 1389.

The UNUM decision marks a Supreme Court shift away from ERISA preemption and a shift toward state regulation of insurance. UNUM is the basis for recent district court decisions holding that state bad faith claims are exempted from ERISA preemption. UNUM clarifies Pilot Life and emphasizes that a careful evaluation of the state law is required in determining whether the law is preempted by ERISA.

In UNUM, the Supreme Court even suggested that state law remedies for benefits might exist, but that the issue was not before the court[6]:

> "UNUM next contends that ERISA's civil enforcement provision, §502(a) 29 U.S.C. §1132(a), preempts any action for plan benefits brought under state rules such as notice-prejudice. Whatever the merits of UNUM's view of §502(a)'s

---

[5] 'The Notice Prejudice Rule is a state statute which requires the insurer to prove that it suffered actual prejudice from delay of notice of a claim. Prejudice is not presumed from delayed notice alone. The insurer must show actual prejudice, not the mere possibility of prejudice.' (citations omitted) UNUM, 119 S.Ct. at 1386.

[6] However, the issue is before the Court in a petition for cert entitled Nelson v. UNUM (copy attached) where the 9th Circuit ruled that California's bad faith cause of action was not exempt from ERISA preemption by the ERISA savings clause. The Supreme Court has not ruled on whether to grant cert.

preemptive force, the issue is not implicated here.   Ward sued under
§502(a)(1)(B) 'to recover benefits due ... under the terms of his plan.'   The
notice-prejudice rule supplied the relevant rule of decision for this §502(a) suit.
The case therefore does not raise the question whether §502(a) provides the sole
launching ground for an ERISA enforcement action."

Id. at 1390-1391.


### Oklahoma Bad Faith Claims Are Exempt from ERISA

Based on _UNUM_, the District Court in _Lewis v. Aetna U.S. Healthcare, Inc._, 78 F.Supp.
1202 (ND Okla. 1999) carefully analyzed the Oklahoma bad faith cause of action and concluded
that it avoided preemption by falling within ERISA's saving clause. The analysis in _Lewis_
regarding the savings clause is identical to the analysis required in determining reverse
preemption by the McCarran-Ferguson Act because the test is whether the law "regulates the
business of insurance."

The District Court in _Lewis_ held:

"Plaintiff asserts a second cause of action in tort for breach of the implied-in-law
covenant of good faith and fair dealing under Christian v. American Home
Assurance Co., 577 P.2d 899 (Okla. 1977).  Plaintiff argues that a Christian tort
action constitutes enforcement of a state rule that 'regulates insurance' under the
test for construing the saving clause recently announced by the United States
Supreme Court in UNUM Life Ins. Co. of America v. Ward, 526 U.S. 358, 119
S.Ct. 1380, 143 L.Ed 2d 462 (1999).  The question presented is whether ERISA
preempts a Christian cause of action, or whether, in light of UNUM, such a cause
of action 'regulates insurance' and therefore avoids preemption pursuant to
ERISA's saving clause. 29 U.S.C. §1144(b)(2)(A).   Under the allegations
accepted as true here, the issue is whether an insurance company may refuse to
pay a rightful claim in bad faith, thereby forcing the claimant to hire an attorney
and incur unnecessary costs, but ultimately pay the benefits due under the policy,
and finally invoke ERISA preemption and its statutory limitations on recovery to
the benefits payable under the policy, thus avoiding all accountability both to the
insured and to the state of Oklahoma for its conduct.  The Court finds that the
history, express terms, and consistent application of the Christian cause of action
compel the conclusion that the purpose and effect of this State rule is to 'regulate
insurance' as that phrase has been defined by the United States Supreme Court in
UNUM.  As a result, Plaintiff's tort cause of action is not preempted by ERISA
and may proceed under Oklahoma law.

To fully understand Christian, it is necessary first to understand its legal context
by reviewing the relevant statutory provisions regulating insurance in Oklahoma.
The Oklahoma statutes evidence a specific legislative policy against the bad faith

5

failure to pay rightful claims.  In particular, the Insurance Code, Okla. Stat. tit. 36 §101 et seq., contains several regulatory restrictions that are relevant to the issue of bad faith:  Article 12 of the Insurance Code, entitled Unfair Practices and Frauds, regulates certain practices pertaining to the payment of claims generally, as well as the failure to pay claims in violation of the Uniform Claims Settlement Practices Act; Okla. Stat. Tit. 36 §1219 creates a private right of action if an insurer does not pay a valid claim within 60 days; Okla Stat. tit. 36 §3629 obligates an insurer to settle or reject a claim within 90 days of receiving a proof of loss; and Okla. Stat. tit. 36 §4404(A)(8) requires a standard clause in each accident and health insurance policy pursuant to which insurers must pay claims promptly.

It is settled law that Oklahoma does not recognize a private right of action for a violation of the Unfair Settlement Practices Act, Okla. Stat. tit. 36 §1250.1 et seq. See Gianfillippo v. Northland Casualty Co., 861 P.2d 308, 310 (Okla. 1993); Walker v. Chouteau, 849 P.2d 1085 (Okla. 1993).  However, the Insurance Code in general, and the Act in particular, reflect a clear State policy of regulating insurance in part by prohibiting the bad faith failure by insurers to pay promptly the rightful claims of insureds.

As discussed more fully below, the Christian court expressly referenced this legislative policy in holding that Oklahoma recognized the tort of breach of implied duty of good faith and fair dealing in an accident insurance policy. This tort has been recognized with respect to all insurance policies. See McCorkle v. Great Atl. Ins. Co., 637 P.2d 583, 588 (Okla. 1981)."

The District Court carefully analyzed the Christian case as the first case in Oklahoma to recognize the tort of bad faith.

"In reversing the trial court's summary judgment in favor of the insurer, the Oklahoma Supreme Court first described the question presented as 'whether under Oklahoma law an insurance company may be subjected to liability in tort for a willful, malicious and bad faith refusal to pay a valid insurance claim.' Id. at 900. The court observed that a growing number of jurisdictions had recognized a cause of action for bad faith refusal to pay benefits due under an insurance policy, noting that:

> 'This is a distinct tort based upon an implied duty of the insurer to act in good faith and deal fairly with its insured.  This duty is not consensual, it is impose by law.  Breach of the duty sounds in tort, notwithstanding that it also constitutes a breach of contract, and plaintiff insured may recover consequential and, in a proper case, punitive damages.  The essence of the cause of action is bad faith.'

Id. at 901.

The court then discussed three sources of legal authority for this tort: the Oklahoma Insurance Code, and two California cases, Fletcher v. W. Nat'l. Life Ins. Co., 10 Cal.App. 3d 376, 89 Cal.Rptr. 78 (1970), and Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566 108 Cal.Rptr. 480, 510 P.2d 1032 (1973). Quoting from Fletcher, the Christian court emphasized that the tort arises out of the unique relationship between insured and insurer, stating:

> 'In Fletcher, supra, the court discussed the special relationship between an insurer and its insured which gives rise to the duty of good faith and fair dealing. The court observed that the industry has a quasi-public nature, that it involves the public interest and for that reason it is largely governmentally regulated. The consumer has no bargaining power and no means of protecting himself from the kinds of abuses set forth in appellant's petition. The following discussion of this special relationship between an insurance company and its insured, is relevant here: "To some extent this special relationship and duties of the insurer exists in recognition of the fact that that the insured does not contract ... 'to obtain a commercial advantage but to protect (himself) against the risks of accidental losses. including the mental distress which might follow the losses. Among the considerations in purchasing ... insurance, as insurers are well aware, is the peace of mind and security it will provide in the event of an accidental loss ... ' These considerations are particularly cogent in disability insurance. The very risks insured against presuppose that if and when a claim is made. the insured will be disabled and in straight financial circumstances and, therefore, particularly vulnerable to oppressive tactics on the part of an economically powerful entity." ' (emphasis in original)

> 577 P.2d at 902 (quoting Fletcher).

The Christian court next emphasized the extensive statutory regulation of insurance in Oklahoma stating:

> 'We have recognized the quasi-public nature of insurance companies and the need to subject companies to state control for the protection and benefit of the public. Oklahoma Benefit Life Assoc. v. Bird, 192 Okla. 288, 135 P.2d 994 (1943). Perusal of our insurance code. Title 36. Oklahoma Statutes, reveals the extensive government regulation of the industry in this state.' (emphasis added)

7

Finally, the <u>Christian</u> court returned to the California common law to explain the scope of the duty that it had recognized as arising from the legislative policy underlying Oklahoma insurance law, quoting from <u>Gruenberg</u>:

> '[I]n the case before us we consider the duty of an insurer to act in good faith and fairly in handling the claim of an insured, namely a duty not to withhold unreasonable payments due under a policy. These are merely two different aspects of the same duty. That responsibility is not the requirement mandated by the terms of the policy itself—to defend, settle, or pay. It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. Where in so doing, it fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing.' (emphasis in original)

> <u>Id.</u> (quoting <u>Gruenberg</u>, 108 Cal. Rptr., 480, 510 P.2d at 1037)/

Thus, in <u>Christian</u>, the Oklahoma Supreme Court established a cause of action sounding in tort for a violation of the duty of good faith and fair dealing in an insurance contract, basing it in part on California common law and in part on the legislative policy expressed in the Oklahoma Insurance Code.

The Oklahoma Supreme Court has since consistently limited this cause of action, based as it is on the State's statutory regulation of insurance, to the insurance industry.

Since deciding <u>Christian</u> in 1977, the Oklahoma Supreme Court has often explained and amplified the tort of breach of the implied covenant of good faith and fair dealing. A careful review of these cases dictates two conclusions: first, the <u>Christian</u> tort in Oklahoma arises out of the unique relationship between insured and insurer, and, second, as a result, the tort has never been extended beyond the insurance area."

The District court then analyzed whether the Oklahoma bad faith law constitutes a state law that "regulates insurance" in light of the <u>*UNUM*</u> decision:

> "The United States Supreme Court recently articulated the analytical framework to be applied by this Court in resolving whether a state law 'regulates insurance' within the meaning of the saving clause. See <u>UNUM Life Ins. Co. of America v. Ward</u>, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999). First, the Court asks whether, from a 'common-sense view of the matter,' the contested

prescription regulates insurance.   See UNUM, 119 S.Ct. at 1386, (quoting Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 740 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); see also Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 48, 107 S.Ct. 1549, 94 L.Ed.2d 39 (1987).   Second, the Court considers three factors employed to determine whether the regulation fits within the 'business of insurance' as that phrase is used in the McCarran Ferguson Act, ch. 20, 59 Stat. 33 (1945) (codified as amended at 15 U.S.C. §1011-1015 (1994)): 'first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry.' UNUM, 119 S.Ct. at 1386, (quoting Metropolitan Life, 471 U.S. at 743, 105 S.Ct. 2370 (emphasis, citations and internal quotation marks omitted)); see also Pilot Life, 481 U.S. at 48-49, 107 S.Ct. 1549.

In UNUM, the state law at issue was a California common law notice-prejudice rule that provided as follows:

> '[A] defense based on an insured's failure to give timely notice [of a claim] requires the insurer to prove that it suffered actual prejudice.   Prejudice is not presumed from delayed notice alone. The insurer must show actual prejudice, not the mere possibility of prejudice.' (citations omitted)
>
> UNUM, 119 S.Ct. at 1386.

The Supreme Court applied the above-described analysis and concluded that California's notice-prejudice rule regulated insurance under ERISA, and therefore escaped preemption under ERISA's saving clause.   See id.   Applying the same analysis in the instant case, the Court finds that a Christian cause of action similarly 'regulates insurance' and therefore escapes preemption under the saving clause."

The Court clearly distinguished the Oklahoma tort of bad faith from the Mississippi tort of bad faith which was preempted in *Pilot Life*.

"Defendant further argues that the cause of action for breach of the covenant of good faith in Oklahoma resembles the Mississippi law at issue in Pilot Life. Under that law, punitive damages could be sought for 'bad faith' in denying claims without any reasonably arguable basis for the refusal to pay.   See UNUM, 119 S.Ct. at 1387 (citing Pilot Life, 481 U.S. at 50, 107 S.Ct. 1549).   The United States Supreme Court determined in Pilot Life that although Mississippi had 'identified its law of bad faith with the insurance industry, the roots of this law are firmly planted in the general principles of Mississippi tort and contract law.' Pilot Life, 481 U.S. at 50, 107 S.Ct. 1549.   The Court stated that under the Mississippi common law of bad faith, 'any breach of contract, and not merely breach of an

insurance contract, may lead to liability for punitive damages.' Id.  As a result, the Court in Pilot Life held that the law in question did not 'regulate insurance' under either the McCarran Ferguson factors or a common-sense understanding of that phrase, and therefore did not fall within the ERISA saving clause. Id.

The differences between the Oklahoma tort and the Mississippi tort are manifest. First, as discussed above, the Christian tort is 'firmly planted' in Oklahoma's statutory 'policy concerns specific to the insurance industry,' UNUM, 119 S.Ct. at 1388, not in 'the general principles of [state] tort and contract law.' Id. at 1387. Furthermore, this tort does not exist outside the insurance industry, and therefore is not available for 'any breach of contract.' Id. Thus, Pilot Life is inapposite."

The Court next considered whether the state law 'regulates the business of insurance,' applying the criteria under the McCarran Ferguson Act:

"Preliminarily, the Court notes that the UNUM opinion expressly rejected the assertion that a state regulation must satisfy all three McCarran Ferguson factors in order to 'regulate insurance' under ERISA's saving clause.  See Id. at 1389. Rather, the UNUM court indicated that the McCarran Ferguson factors are 'considerations [to be] weighed' in determining whether a state law regulates insurance, id, (quoting Pilot Life, 481 U.S. at 49, 107 S.Ct. 1549), and that '[n]one of these criteria is necessarily determinative in itself,' id., (quoting Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982)).

The UNUM Court observed that in Metropolitan Life, the case in which the Court first used the McCarran Ferguson formulation to assess whether a state law 'regulates insurance' for purposes of ERISA's saving clause, the Supreme Court called the McCarran Ferguson factors 'relevant'; it 'did not describe them as "required." ' UNUM, 119 S.Ct. at 1389; see also O'Connor v. UNUM Life Ins. Co. of America, 146 F.3d 959, 963 (D.C.Cir. 1998) ('That the factors are merely "relevant" suggests that they need not all point in the same direction, else they would be "required." ').  The framework established in Metropolitan Life first requires the court to ask whether the law in question fit a common-sense understanding of insurance regulation, UNUM, ₁19 S.Ct. at 1389 (quoting Cisneros, 134 F.3d at 945), and then to look to the McCarran Ferguson factors as checking points of 'guideposts, not separate essential elements ... that must each be satisfied' to save the state's law. Id. at 1389 (quoting Cisneros, 134 F.3d at 946).

The first McCarran Ferguson factor asks whether the rule at issue 'has the effect of transferring or spreading a policyholder's risk.' Id. at 1389 (quoting Metropolitan Life, 471 U.S. at 743, 105 S.Ct. 2380 (internal quotation marks omitted)).  As in UNUM, this Court need not pursue this point, because the remaining McCarran Ferguson factors, verifying the common-sense view, are securely satisfied. See Id.

10

The <u>Christian</u> tort serves as 'an integral part of the policy relationship between the insurer and the insured' and thus satisfies the second McCarran Ferguson factor. See <u>Id</u>.   (quoting <u>Metropolitan Life</u>, 471 U.S. at 743, 105 S.Ct. 2380). Oklahoma's rules changes the bargain between insurer and insured; consistent with the statutory Insurance Code, it 'effectively creates a mandatory contract term' that requires the insurer to promptly and in good faith pay off legitimate claims. <u>Id</u>., 119 S.Ct. at 1389-90 (quoting <u>Cisneros</u>, 134 F.3d at 945). As the Ninth Circuit said of California's notice-prejudice rule, the Christian cause of action 'dictates the terms of the relationship between the insurer and the insured, and consequently, is integral to that relationship.' <u>Id</u>., at 1390 (quoting <u>Cisneros</u>, 134 F.3d at 946)

The <u>Christian</u> cause of action also satisfies the third McCarran Ferguson factors, which asks whether the rule is limited to entities within the insurance industry. As discussed at length above, the Oklahoma Supreme Court has consistently declined to extend the <u>Christian</u> tort beyond the insured-insurer relationship, recognizing that the tort, as well as its statutory underpinnings, are designed to address the uniqueness of that relationship.   Thus, a <u>Christian</u> cause of action 'does not merely have an impact on the insurance industry; it is aimed at it.' <u>UNUM</u>, 119 S.Ct. at 1390 (quoting <u>FMC Corp. v. Holliday</u>, 498 U.S. 52, 61, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990)).

In conclusion, the Court finds that the <u>Christian</u> cause of action is based on Oklahoma's statutory policy concerns specific to the insurance industry. The Court further finds that the <u>Christian</u> tort does not exist outside the context of insurance contracts. Because under <u>UNUM</u>, <u>Christian</u> satisfies the requirements of the McCarran Ferguson Act for a state law that regulates the business of insurance, the Court concludes that the cause of action is a state law that regulates insurance and therefore avoids preemption pursuant to ERISA's saving clause.

Based on the above, Defendant's Motion to Dismiss Plaintiff's second cause of action is hereby denied."

### New York Bad Faith Claims Are Exempt From ERISA

Likewise, see <u>*Selby v Principal Mutual Life Insurance Co.*</u>, 2000 WL 178191 (NY) (2/16/00), which held that a New York claim of bad faith based on state statute survived ERISA preemption:

"Defendant argues that Plaintiff's claim pursuant to N.Y. Ins. Law §3221(k)(6) is preempted by ERISA. Defendant does not argue that ERISA preempts the substance of the New York insurance statute; defendant concedes that the statute is saved from preemption by ERISA's saving clause. Defendant argues instead that the Selbys may not bring a civil action pursuant to state insurance law to recover benefits under an ERISA plan, or to assert their rights under such a plan,

because ERISA §502(a) provides the exclusive remedies for claims asserted by ERISA-plan participants.

Defendant relies on <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41 (1987), in which the United States Supreme Court held that ERISA preempts general state common law actions asserting the improper processing of a claim for benefits. Plaintiff in <u>Pilot Life</u> brought an action under Mississippi's law of bad faith, applicable to any breach of contract, alleging a breach of his insurance contract caused by his insurer's mishandling of his claim. The Court in <u>Pilot Life</u> concluded that Mississippi's law of bad faith, which was grounded in general principles of tort and contract law, was neither a law 'specifically directed toward [the insurance] industry' nor one that satisfied the criteria under the McCarran Ferguson Act for laws that affect the 'business of insurance' <u>Id.</u> at 50-51. It thus did not regulate insurance within the meaning of ERISA's saving clause and was preempted by §514(a). <u>Id.</u> at 49. The Court buttressed its conclusion by recognizing that Congress intended §502(a) to be 'the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits, and that varying state causes of action for claims within the scope of §502(a) would pose an obstacle to the purposes and objectives of Congress.' <u>Id.</u> at 52.

<u>Pilot Life</u>, however, is not on point. Plaintiffs are not suing under a state common law of general application preempted by ERISA; they are suing under a state statute specifically directed towards the insurance industry which defendant concedes is saved from preemption. Plaintiffs are not alleging that defendant improperly processed their claim; they are alleging that defendant improperly denied their claim under a substantive provision of their plan.

Moreover, defendant's reliance on <u>Pilot Life</u> is misplaced since that case did not address the distinct question presented here: whether ERISA §502(a) preempts a claim based on a state law which regulates insurance within the meaning of ERISA's saving clause. The United States Supreme Court recently declined to address this question in <u>UNUM Life Ins. Co. of Am. v. Ward</u>, 526 U.S. 358, ____ & n. 7; 119 S.Ct. 1380, 1390-91 & n.7; 143 L.Ed. 2d 462, 477-78 & n. 7 (1999), and indicated that the question remained unresolved."

## Alabama Bad Faith Claims Are Based on a Law
## Which Regulates Insurance and Are Therefore Exempt From ERISA

Justice Houston of the Alabama Supreme Court in *Thomas v. Principal Financial Corp.*, 566 So.2d 735 (Ala. 1990) has provided an excellent explanation of the development of the law of bad faith in Alabama.

"This Court first recognized an actional tort for an insurer's intentional refusal to pay a claim in Chavers v. National Security Fire & Cas. Co., 405 So.2d 1 (Ala. 1981). The Chavers Court held that there was an implied-in-law duty of good faith and fair dealing in contractual relationships between insurers and their insureds. Bad faith was defined as 'the intentional failure by the insurer to perform this duty implied in law.' 405 So.2d at 5.

Accordingly, a two-tiered test was established by which to determine whether an insurer had acted in bad faith in refusing to pay a claim. In recognizing the new tort, the Court in Chavers explained that the policy considerations underlying the disallowance of a negligence standard of conduct in actions by insureds against their insurers did not proscribe a cause of action arising out of intentional misconduct by insurers.

The Chavers test was refined and clarified in Gulf Atlantic Life Ins. Co. v. Barnes, 405 So.2d 916, 924 (Ala. 1981).

The elements of a bad faith claim were summarized in National Security Fire & Cas. Co. v. Bowen, 417 So.2d 179, 183 (Ala. 1982), as follows:

> 'An insurer is liable for its refusal to pay a direct claim when there is no lawful basis for the refusal coupled with actual knowledge of that fact. Chavers v. National Security Fire Ins. Co., Ala., 405 So.2d 1 (1981). No lawful basis "means that the insurer lacks a legitimate or arguable reason for failing to pay the claim." Gulf Atlantic Life Ins. Co. v. Barnes, Ala. 405 So.2d 916 (1981). When a claim is "fairly debatable," the insurer is entitled to debate it, whether the debate concerns a matter of fact or law. Ibid.

> Under those authorities the plaintiff in a "bad faith refusal" case has the burden of proving:

> (a) an insurance contract between the parties and a breach thereof by the defendant;

> (b) an intentional refusal to pay the insured's claim;

> (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);

> (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;

> (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's

intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.' (Emphasis in original.)

Following the decisions in Chavers, Barnes and Bowen, this Court established what is now known as the 'directed verdict on the contract claim standard' in bad faith cases. See Burkett v. Burkett, 542 So.2d 1215, 1218 (Ala. 1989).

The Dutton Court's characterization of a plaintiff's burden of proof as a 'heavy' one was no doubt prompted by the Court's previous recognition in Chavers of the necessity for allowing insurers a broad range of freedom to thoroughly evaluate claims and to decline payment in nonmeritorious cases. However, keenly aware of the fact that there were countervailing policy considerations that weighed in favor of an insured's right to have his claim properly evaluated and promptly paid by the insurer, the Dutton Court, in articulating the standard to be applied in 'normal' or 'ordinary' bad faith cases, allowed for a different standard to be applied in certain unusual or extraordinary cases.

In both Kountz and Aetna, the Court, quoting Gulf Atlantic Life Ins. Co. v. Barnes, supra, recognized than an intentional failure on the part of an insurer to determine whether there was a lawful basis for denying a claim could be established with proof that the insurer either intentionally or recklessly failed to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review. In Aetna, the Court stated: 'Considering the fact that the decision to deny [the claim] was made without the benefit of "critical" sections of the medical file, the jury could find that the claim was not "properly investigated," and that there was a "reckless indifference to fact or to proof."

The fact that there is an Alabama Bad Faith Statute in the Insurance Code and that the fact that the tort of bad faith has developed only within the context of insurance law establishes that the tort of bad faith is a law "which regulates insurance." Thus, a bad faith claim is exempt from preemption under the ERISA Savings Clause.

14

### Alabama Bad Faith Statute Creates a Cause of Action[7]
### For Bad Faith and Regulates Insurance

Even though a claim for a bad faith denial of insurance benefits is exempt from ERISA preemptions under the savings clause and in light of *UNUM*, the issue remains whether a bad faith claim in Alabama exists under the Bad Faith Statute and if so, whether such a claim is reverse preempted by the McCarran Ferguson Act.  The Alabama Supreme Court has never stated whether a Bad Faith cause of action in Alabama may be based on the Alabama Bad Faith Statute. In *Hilley v. Allstate Insurance Company*, 562 So.2d 184 (Ala. 1990), Justice Houston declined to decide whether Al. St. 27-12-24 was the basis for a statutory bad faith insurance claim.  The Court affirmed summary judgment on Plaintiff's claim under Al.St. 27-12-25 with this footnote:

> "We are unable to find any §27-12-25 in the Code.  Therefore, we cannot hold the trial court in error for entering summary judgment in favor of Allstate on the claim based on this Code section.  We do note that Ala.Code 1975 §27-12-24, is the codification of the tort of bad faith: 'No insurer shall, without just cause, refuse to pay or settle claims arising under coverages provided by its policies in this state, and with such frequency as to indicate a general business practice in this State....'  However, we cannot assume for purposes of this appeal that the Hilleys intended their complaint to allege violation of Ala.Code 1974, §27-12-24."

The only other reference by the Alabama Supreme Court to Al.St. 27-12-24 is footnote 2 of Judge Houston's dissent in *Healthamerica v. Menton*, 551 So.2d 235, 254 (Ala. 1989):

> "Alabama Code 1975, §27-12-24 provides: 'No insurer shall, without just cause, refuse to pay or settle claims arising under coverages provided by its policies in this state...' (Emphasis supplied.)

> From the pleadings in Belasco v. W.K.P. Wilson & Son, Inc., supra, we cannot determine whether this Code section, which is contained in Chapter 12 ('Trade Practices Law') of Title 27 ('Insurance') was relied on by Belasco as a law regulating insurance. 'Plaintiffs argue that the Alabama law of bad faith, which forms the basis of one of their claims, is a "law ... which regulates insurance," 29

---

[7] Since this is an insurance case, the court need not determine whether a bad faith claim may be based on the Alabama Bad Faith Statute.  However, if the courts hold that in light of *UNUM*, the saving clause does not exempt a bad faith claim from ERISA, it is Plaintiff's position that the McCarran Ferguson reverse preempts the claim which is based on Alabama statute which regulates insurance.

U.S.C. §1144(b)(2)(A), and therefore falls under the saving clause. However, the
Alabama law of bad faith appears to us to have the same roots 'in the general
principles of ... tort and contract law' as was the case in Dedeaux. 833 F.2d at
281."

In _Healthamerica_, the Alabama Supreme Court ruled that the Alabama Twisting Statute,
Al.St. 27-12-6 is a state law regulating insurance and therefore saved from preemption by
ERISA's savings clause[8]:

> "Second, if it is assumed for purposes of argument, or if some other court decides
> that a claim under §6-5-101 or its common law counterpart is preempted by
> section 514(a) of ERISA, then we would hold that a claim under §27-16-6 could
> still be maintained under the saving clause of ERISA as a sate law regulating the
> business of insurance." (emphasis added)

Supra 243.

Justice Houston disagreed with the majority in _Healthamerica_ and expressed the opinion
that the Alabama law of twisting does not "regulate insurance" as defined in the McCarran-
Ferguson Act and by the U.S. Supreme Court. Judge Houston's analysis demonstrates that he
would probably conclude that Alabama's Bad Faith statute and the Alabama Bad Faith Cause of
Action are laws which regulate insurance:

> "The Alabama 'twisting' statute appears to be directed toward the insurance
> industry. However, since 1907, the Alabama Legislature has provided a civil
> action of '[m]isrepresentations of a material fact made willfully to deceive, or
> recklessly without knowledge.' §6-5-101. The Alabama Supreme Court, at least
> since 1933, has allowed punitive damages to be recovered in such
> misrepresentation actions, when the misrepresentations were made by the
> defendant with the intent to defraud the plaintiff. Cartwright v. Hughes, 226 Ala.
> 464, 147 So. 399 (1933). So the roots of misrepresentation were firmly planted in
> the general principles of Alabama tort law, before the Legislature enacted the
> 'twisting' statute in 1971. Until the post-final judgment amendment of his
> complaint, Menton had pursued his civil action against Healthamerica and Merle
> under this firmly planted general principle of Alabama tort law.

> In Pilot Life, supra, the United States Supreme Court found that the factors set out
> in the McCarran-Ferguson Act did not support Dedeaux's assertion that the
> Mississippi law of bad faith 'regulates insurance,' for (1) it did not affect a
> spreading of policyholder risk: (2) '[t]he state common law of bad faith is ... no

---

[8] The Alabama Supreme Court acknowledged that the Eleventh Circuit decision of _Farlow v._
_Union Cen Life Ins Co_, 874 F.2d 791 (11ᵗʰ Cir. 1989), ruled otherwise.

more 'integral' to the insurer-insured relationship than any State's general contract law is integral to a contract made in that State.' 481 U.S. at 51, 107 S.Ct. at 1555; and (3) 'Mississippi's law of bad faith, even if associated with the insurance industry, has developed from general principles of tort and contract law available in any Mississippi breach of contract case.' 481 U.S. at 51, 107S.Ct. at 1555.  The Court then held 'the Mississippi common law of bad faith at most meets one of the three criteria used to identify the "business of insurance" under the McCarran-Ferguson Act, and used in Metropolitan Life to identify laws that "regulat[e] insurance" under the saving clause.'

I do not find that the 'twisting' statute affected a spreading of the risks among policyholders; or that the 'twisting' statute is more integral to the insurer-insured relationship than Alabama's misrepresentation statute, as developed from general principles of tort law; or that the statute in its definition of 'person' and 'insurer' is limited to entities in the insurance business.  Therefore, using Justice O'Connor's criteria for determining when a state law 'regulates insurance' and is therefore saved from ERISA preemption, I would find that the 'twisting' statute does not save Menton's claim for preemption.  By this, I do not mean to imply that Alabama's 'twisting' statute affords a private cause of action to Menton.  I need not reach this issue."

## CONCLUSIONS

The ERISA Savings Clause exempts Alabama's Bad Faith Denial of Insurance Benefits which is decisional law which regulates the Business of Insurance.  The Alabama Bad Faith Statute also provides a basis for a claim for bad faith denial of insurance benefits.  The Alabama Bad Faith Statute is a law which regulates insurance.  A claim based on the Alabama Bad Faith Statute is  reverse preempted by the McCarran Ferguson Act and Plaintiffs claim for bad faith should be allowed by amendment."

---

⁹ On 11/1/99, Chief District Judge of the District of Colorado in *Hall v  UNUM*, allowed such an amendment because the Colorado Tort of Bad Faith was held to be a law regulating insurance and within the exception to preemption.(attached).

## EPILOGUE

### The Courts Can Rescue ERISA[10]

Federal courts can rescue ERISA and restore the intent and the spirit of ERISA by allowing state causes of action based on state laws which regulate insurance.  Said claims are exempted from ERISA by the savings clause.  Claims based on state statutes which regulate insurance are reverse preempted by the McCarran Ferguson Act.  The U.S. Supreme Court has given the green light to such claims by its unanimous decision in *UNUM*.  Allowing such claims will provide a measure of deterrence to the increasingly flagrant abuse of the rights of insureds.

MYRON K. ALLENSTEIN
ALLENSTEIN & ASSOCIATES
Attorney for Plaintiff
P.O. Box 487
Gadsden, AL  35902-0487
(256) 546-6314

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on the following, this _17th_ day of April, 2000.

Hon. Leigh Ann Hodge
Balch & Bingham, LLP
P.O. Box 306
Birmingham, AL  35201

MYRON K. ALLENSTEIN

(Christian  Brief in support of allowing a bad faith claim)

---

[10] See "Can the Courts Rescue ERISA" 29 Cumb L Rev 285 by U. S. District Judge William M Acker Jr. 1998-1999

18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Richard P. Matsch

FILED
UNITED STATES DISTRICT COURT
DENVER, COLO

NOV 1 1999

JAMES R. MANSPEAKER
CLERK

Civil Action No.   97-M-1828

RUSSANN H. HALL,

    Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA,

    Defendant.

RECEIVED

NOV 0 2 1999

Breit, Bosch, Levin & Coppola, P.C

---

## ORDER GRANTING MOTION FOR LEAVE TO FILE AMENDED
## AND SUPPLEMENTAL COMPLAINT ADDING THIRD CLAIM FOR RELIEF

---

Upon consideration of the Plaintiff's Motion for Leave to File Amended and

Supplemental Complaint submitted September 3, 1999, with the proposed Amended

and Supplemental Complaint attached, and after consideration of the arguments in the

plaintiff's brief in support and the defendant's brief in response, and it being the

conclusion of the court that the tort of bad faith breach of an insurance contract is

based upon a duty imposed upon an insurer to its insured, and is therefore a law

regulating the business of insurance and within the exception to preemption under

ERISA, it is

ORDERED that the motion to amend is granted and the Amended and

Supplemental Complaint tendered therewith is filed.

DATED:   November _1st_ 1999.

BY THE COURT:

Richard P. Matsch, Chief Judge

EXHIBIT "B"

No. 99-1503

IN THE

# 𝔖𝔲𝔭𝔯𝔢𝔪𝔢 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔱𝔥𝔢 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰

KRIS NELSON,

*Petitioner,*

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA, INC.,

*Respondent.*

Petition for a Writ of Certiorari to the
United States Court of Appeals
for the Ninth Circuit

## PETITION FOR A WRIT OF CERTIORARI

*On the Brief:*
DOUGLAS K. DEVRIES
MART & DEVRIES
721 Ninth Street
Suite 300
Sacramento, CA 95813
(916) 441-7394

WILLIAM S. SHERNOFF
MICHAEL J. BIDART
JEFFREY ISAAC EHRLICH
SHERNOFF, BIDART,
  DARRAS & DILLON
600 S. Indian Hill Blvd.
Claremont, CA 91711
(909) 621-4935

ARNOLD R. LEVINSON
  *Counsel of Record*
REBECCA GREY
PILLSBURY & LEVINSON, LLP
One Embarcadero Center
38th Floor
San Francisco, CA 94111
  (415) 433-8000
*Attorneys for Petitioner
  Kris Nelson*

WILSON-EPES PRINTING CO., INC. - (202) 789-0096 - WASHINGTON, D.C. 20001

EXHIBIT "C"

## QUESTIONS PRESENTED

1. Whether the remedy provisions of ERISA are exclusive and preempt a claim based on a state law which regulates insurance within the meaning of ERISA's savings clause.

2. Whether a state tort claim for insurance bad faith which is applied only to insurance claims is a law regulating insurance within the meaning of ERISA's savings clause.

(i)

ii

## PARTIES

The Petitioner is Kris Nelson ("Nelson").

The Respondent is UNUM Life Insurance Company of America, Inc. ("UNUM").

## TABLE OF CONTENTS

|  | Page |
|---|---|
| QUESTIONS PRESENTED | i |
| PARTIES | ii |
| OPINIONS BELOW | 1 |
| JURISDICTION | 1 |
| STATUTES AND REGULATIONS INVOLVED | 1 |
| STATEMENT OF THE CASE | 1 |
| A. Introduction | 1 |
| B. Factual Background | 3 |
| C. Proceedings Below | 4 |
| REASONS THE PETITION SHOULD BE GRANTED | 8 |
| I. THERE IS A GREAT SPLIT AMONG AND WITHIN THE CIRCUITS REGARDING THE IMPORTANT FEDERAL QUESTION OF THE SCOPE OF ERISA PREEMPTION | 8 |
| A. ERISA Preemption Principles | 8 |
| B. Pilot Life | 9 |
| C. The Kanne Case | 9 |
| D. The Pre-Ward Conflicts: Kanne and Williams | 11 |
| E. Ward Announced that the Feasibility of Alternative Remedies in ERISA Was An Unsettled Question | 15 |
| F. The Post-Ward Conflicts | 16 |

(iii)

iv

## TABLE OF CONTENTS—Continued

| | | Page |
|---|---|---|
| II. | THE ACCURATE SCOPE OF ERISA'S PRE-EMPTIVE SWEEP IS OF GREAT PUBLIC IMPORTANCE | 19 |
| III. | ERISA DOES NOT PREEMPT AN INSUR-ANCE BAD FAITH ACTION IN CALIFOR-NIA | 22 |
| | A. California's Insurance Bad Faith Law Falls Within the Savings Clause | 23 |
| | B. ERISA Does Not Provide the Sole Remedy for Claims of Unlawful Insurance Practices and Does Not Preempt Laws Which "Regu-late Insurance" as Does California's Insur-ance Bad Faith Law | 26 |

CONCLUSION ... 30

APPENDIX

A. Order of the Court of Appeals, filed December 20, 1999 ... 1a

B. Order of the District Court Granting in Part and Denying in Part Plaintiff's Motion to Amend, filed September 22, 1999 ... 2a

C. STATUTORY PROVISIONS:

| | |
|---|---|
| 15 U.S.C. § 1011 | 8a |
| 28 U.S.C. § 1254 | 9a |
| 29 U.S.C. § 1001 | 10a |
| 29 U.S.C. § 1002 | 13a |
| 29 U.S.C. § 1132 | 33a |
| 29 U.S.C. § 1144 | 43a |
| Cal. Bus. & Prof. Code § 17200 | 48a |
| Cal. Ins. Code § 790.03 (h) | 49a |

v

## TABLE OF AUTHORITIES

*CASES* | Page
---|---
Andrews-Clarke v. Travelers Ins. Co., 984 F.Supp. 49 (D. Mass. 1997) | 21
Anschultz v. Connecticut General Life Ins. Co., 850 F.2d 1467 (11th Cir. 1988) | 11, 12
Bast v. Prudential Ins. Co. of America, 150 F.3d 1003 (9th Cir. 1998) | 10, 22
Bonestroo v. Continental Life and Acc. Co., 79 F.Supp. 1041 (N.D. Iowa 1999) | 14
California Division of Labor Standards Enforce-ment v. Dillingham Construction N.A., Inc., 519 U.S. 316 (1997) | 29
Cannon v. Group Health Serv., 77 F.3d 1270 (10th Cir. 1996) | 22
Cates Construction Inc. v. Talbot Partners, 86 Cal. Rptr.2d 855 (1999) | 24, 25, 26
Cathey v. Metropolitan Life Ins. Co., 805 S.W.2d 387 (Tex. 1991) | 14
Christian v. American Home Assurance Co., 577 P.2d 899 (Okla. 1977) | 18
Clancy v. Employers Health Ins. Co., 1999 WL 1072540 (E.D. La. 1999) | 18
Commercial Life Ins. Co. v. Superior Court, 47 Cal.3d 473 (1988) | 14
Connors v. Maine Medical Center, 70 F.Supp.2d 40 (D.Me 1999) | 17
Crisci v. Security Ins. Co., 66 Cal.2d 425 (1967) | 23
Curry v. Cincinnati Equitable Ins. Co., 834 S.W.2d 701 (Ky. App. 1992) | 14
De Buono v. NYSA-ILA Medical and Clinical Serv-ices Fund, 520 U.S. 806 (1997) | 29
DeBruyne v. Equitable Life Assurance Society of the U.S., 920 F.2d 457 (7th Cir. 1990) | 13, 14
Dishman v. UNUM Life Ins. Co., 1997 WL 906146 (C.D. Cal.) | 21, 22
Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809 (1979) | 23, 24, 25, 26
FMC Corp. v. Holliday, 498 U.S. 52 (1990) | 29
Fletcher v. W. National Life Insurance Co., 10 Cal.App.3d 376 (1970) | 18

vi

## TABLE OF AUTHORITIES—Continued

| | Page |
|---|---|
| Foley v. Interactive Data Corporation, 47 Cal.3d 654 (1988) | 23, 25 |
| Franklin H. Williams Ins. Trust v. Travelers Ins. Co., 50 F.3d 144 (2d Cir. 1995) | 11, 14 |
| Gaylor v. John Hancock Mutual Life Insurance Co., 112 F.3d 460 (10th Cir. 1997) | 13, 18 |
| Gruenberg v. Aetna Insurance Co., 9 Cal.3d 566 (1973) | 18, 23, 26 |
| Hall v. UNUM Life Insurance Co., No. 97-M-1828 (D. Co. Nov. 1, 1999) | 19 |
| Hansen v. Continental Ins. Co., 940 F.2d 971 (5th Cir. 1991) | 12 |
| Hoffman v. Empire Blue Cross, 1999 WL 782518 (S.D.N.Y. 1999) | 17 |
| Humana Inc. v. Forsyth, et al., 119 S.Ct. 710 (1999) | 28 |
| In Re Life Ins. Co. of N. Am., 857 F.2d 1190 (8th Cir. 1988) | 12, 13 |
| International Resources, Inc. v. New York Life Ins. Co., 950 F.2d 294 (6th Cir. 1992) | 29 |
| Kanne v. Connecticut General Life Ins. Co., 867 F.2d 489 (9th Cir. 1988) | passim |
| Kelley v. Sears, Roebuck & Co., 882 F.2d 453 (10th Cir. 1989) | 19 |
| Lewis v. Aetna Life Ins. Co., 78 F. Supp. 2d 1202 (N.D. Okla. 1999) | 18, 19 |
| Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724 (1985) | 29 |
| Moradi-Shalal v. Fireman's Fund Ins. Co., 46 Cal.3d 287 (1988) | 10 |
| New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645 (1995) | 2, 29 |
| Optimal Health Care Services, Inc. v. Travelers Ins. Co., 791 F.Supp. 163 (E.D. Tex. 1992) | 14 |
| Parrino v. FHP, Inc., 146 F.3d 699 (9th Cir. 1998) | 10, 11 |
| Patrick v. UNUM Life Insurance Co., 23 Employee Benefits Cas. 1691 | 22 |
| Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987) | passim |

vii

## TABLE OF AUTHORITIES—Continued

| | Page |
|---|---|
| Ramirez v. Inter-Continental Hotels, 890 F.2d 760 (5th Cir. 1989) | 12 |
| Royal Globe Ins. Co. v. Superior Court, 23 Cal.3d 880 (1979) | 10 |
| Selby v. Principal Mutual Life Ins. Co., 2000 WL 17819, (S.D.N.Y. 2000) | 17 |
| Shaw v. Delta Air Lines, Inc., 463 U.S. 85 (1988) | 8 |
| Smith v. The Guardian Life Ins. Co., 546 So.2d 320 (La. App. 1989) | 14 |
| Spain v. Aetna Life Ins. Co., 11 F.3d 129 (9th Cir. 1993) | 11 |
| Summers v. U.S. Tobacco Co., 214 Ill.App.3d 878 (Ill.App. 1991) | 14 |
| Travelers Ins. Co. v. Cuomo, 14 F.3d 708 (2d Cir. 1993) | 2 |
| UNUM Life Ins. Co. of America v. Ward, 119 S.Ct. 1380 (1999) | passim |
| Villescas v. CNA Ins. Companies, 109 Nev. 1075 (1993) | 14 |

### STATUTES

| | |
|---|---|
| Cal. Bus. & Prof. Code § 17200 | 4 |
| Cal. Ins. Code § 790.03 (h) | 6, 10 |
| ERISA § 502 (a), 29 U.S.C. § 1132 (a) | passim |
| ERISA § 514 (a), 29 U.S.C. § 1144 (a) | 5, 8 |
| ERISA § 514 (b) (2) (A), 29 U.S.C. § 1144 (b) (2) (A) | 5, 18 |
| 15 U.S.C. § 1011 | 9 |
| 28 U.S.C. § 1254 (1) | 1 |
| 29 U.S.C. § 1001 | 5, 8 |
| 29 U.S.C. § 1002 | 8 |

### OTHER AUTHORITIES

| | |
|---|---|
| Stephen S. Ashley, Did UNUM Life Insurance Co. of America v. Ward Overrule Pilot Life Insurance Co. v. Dedeaux? Bad Faith Law Report, vol. XV, No. 9, p. 185 | 21 |
| Brief for the United States as Amicus Curiae Supporting Petitioner in Part and Supporting Respondent in Part, 1998 WL 839957 | 2, 27, 28 |

# PETITION FOR A WRIT OF CERTIORARI

Nelson respectfully submits that a writ of certiorari should issue to review the denial of her petition for a writ of mandate by the United States Court of Appeals for the Ninth Circuit in this case.

## OPINIONS BELOW

The Order of the Court of Appeals is reprinted in the Appendix ("App.") at 1a. The District Court's order denying in relevant part plaintiff's motion to amend is reprinted at App. 2a.

## JURISDICTION

The United States Court of Appeals for the Ninth Circuit's order denying Nelson's writ of mandate was filed on December 20, 1999. This petition is being timely filed within 90 days of that date. This Court has jurisdiction pursuant to 28 U.S.C. § 1254(1).

## STATUTES AND REGULATIONS INVOLVED

This case involves the statutes and regulations set forth at App. 8a to 49a.

## STATEMENT OF THE CASE

### A. Introduction

This case directly presents the question this Court declared unsettled in *UNUM Life Ins. Co. v. Ward*, 119 S.Ct. 1380 (1999). It is a question of vital national importance which affects millions of insured Americans. The appropriate scope and breadth of the preemptive effect of ERISA over state laws regulating insurance is in a state of massive confusion and conflict among and within the federal circuits as well as the state appellate courts. Until *Ward*, all courts which have attempted to define the scope of ERISA preemption in this context have relied on this Court's opinion in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987), as the foundation for their analyses.

However, in their attempts to wrest clarity from the "veritable Sargasso Sea of obfuscation' that is ERISA pre-emption law," *Travelers Ins. Co. v. Cuomo*, 14 F.3d 708, 717 (2d Cir. 1993), *rev'd sub nom. New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995), the Ninth and Second Circuit have issued directly contrary opinions and most of the other circuit courts have issued ambiguous opinions which have been subject to varying interpretations. State appellate courts around the country have experienced a similarly confounding attempt to elucidate ERISA's pre-emptive scope.

Moreover, the United States Solicitor General has urged this Court in *Ward* that there are "substantial reasons" to "reconsider part of the rationale of its decision in *Pilot Life*. . . . *Pilot Life* has been read to preclude even state law causes of action arising under laws that 'regulate insurance'. That portion of *Pilot Life's* rationale is, however, in significant tension with the text of [ERISA's] savings provision." 1998 WL 839957, *20.

In the context of this collective confusion regarding the question of the exclusivity of ERISA's enforcement provisions over state laws expressly carved out from preemption by the savings clause, this Court decided *UNUM Life Ins. Co. v. Ward*, 119 S.Ct. 1380 (1999). *Ward* made clear that most courts have incorrectly interpreted this Court's decision in *Pilot Life* to conclude that even laws which are saved from preemption are nonetheless preempted if in conflict with ERISA's enforcement scheme. However, by only stating what *Pilot Life* did *not* say, *Ward* raised the question of alternative enforcement mechanisms without answering it. Federal and state courts across the country are now continuing to shoot at the appropriate analysis of ERISA's savings clause in the dark. Yet, the most that they can do is attempt to predict this Court's ultimate resolution of the issue because it is the meaning of the Court's decisions in *Pilot Life* and *Ward* which must

serve as the bedrock for any other court's resolution of the issue.

Unfortunately, the burden of this disarray is borne too often by the sick and infirm, whose rights to pursue their insurance benefits under substantive state law hang in the balance. Those within the jurisdiction of the Ninth Circuit have the misfortune of living under the broadest interpretation of ERISA preemption set forth in *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489 (9th Cir. 1988), *cert. denied*, 492 U.S. 906 (1989). *Kanne* held that, under the rationale of *Pilot Life*, laws which are within the savings clause are nonetheless preempted by ERISA if they provide remedies other than those provided in ERISA. Yet, *Kanne* is now in direct conflict with *Ward*, which stated, in effect, that *Kanne's* interpretation of *Pilot Life* was an unwarranted extension of this Court's opinion in that case. In addition to a direct conflict between the Ninth and Second Circuits, discussed *infra*, other circuit courts which purport to follow *Pilot Life's* exclusive enforcement rationale as well as the majority of state cases on the issue are now also in apparent conflict with *Ward*. Moreover, *Ward* has led to intra-circuit conflicts and to developing conflicts between district courts around the country which are now attempting to decipher the interplay between *Ward* and *Pilot Life*.

This Court is faced with a state of growing national confusion and tidal wave of litigation over the question Nelson represents in this petition for a writ of certiorari. As is evident from both pre-*Ward* and post-*Ward* cases, this controversy simply cannot and will not be resolved until this Court answers the questions raised by its prior decisions.

**B. Factual Background**

On May 7, 1996, Nelson filed an action in the Superior Court of the State of California in and for the County of Santa Clara against UNUM LIFE INSURANCE COM-

4

PANY OF AMERICA, INC. ("UNUM"). Therein, Nelson alleged that her employer, Nelson Analytical, Inc., purchased from UNUM a policy of disability insurance in which UNUM agreed to pay Nelson a monthly benefit if she were disabled.

On July 7, 1985, Nelson was severely injured in an automobile accident when the brakes of the car in which she was traveling failed as she was exiting a freeway, causing the car to swerve off the freeway and crash into a tree. Petitioner suffered a shattered or "burst" L4 vertebra, four fractured vertebrae, a fractured skull, and internal injuries resulting in permanent paralysis of her bladder and bowel function. Nelson submitted a disability claim to UNUM, which approved coverage and commenced monthly benefits. Despite having submitted dozens of medical reports documenting her total, permanent disability, on December 29, 1995, UNUM terminated Nelson's benefits allegedly on the grounds that it had insufficient information to support her continued disability.

In addition, UNUM—without any basis for suspicion of dishonesty—had its investigators sneak into Nelson's private wedding party and surreptitiously videotape her during the wedding reception. UNUM investigators also came onto the private grounds of her apartment complex and videotaped her with zoom lenses through her living room window.

## C. Proceedings Below

Nelson's Complaint contained state law causes of action for invasion of privacy, intentional and negligent infliction of emotional distress, breach of the covenant of good faith and fair dealing (insurance bad faith) and violation of California's Unfair Business Practices Act (Cal. Bus. & Prof. Code § 17200 et seq.).

UNUM removed the case to federal court on November 18, 1996. On November 26, 1996, UNUM moved to

5

dismiss all of Nelson's claims alleging that her claims were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

ERISA contains a preemption clause which provides that its provisions preempt any conflicting state laws. ERISA § 514(a), 29 U.S.C. § 1144(a). ERISA also contains a "savings" clause, which excludes from the effect of the preemption clause any laws regulating insurance. ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A).

UNUM argued that Nelson's claim for insurance bad faith did not fall within the savings clause. Nonetheless, even if it did, UNUM claimed that it was still preempted. UNUM urged that ERISA's enforcement provisions were exclusive and thus preempted all state laws which provide a remedy other than those provided in ERISA—even if these state laws fall within the savings clause.

For its authority, UNUM relied primarily upon this Court's decision in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987), as well as the Ninth Circuit's decision in Kanne v. Connecticut General Life Ins. Co., 867 F.2d 489 (9th Cir. 1988), cert. denied, 492 U.S. 906 (1989), and their progeny.

In Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987), this Court held that a claim for tortious denial of insurance benefits filed under a Mississippi law was preempted by ERISA because the Mississippi law did not adequately regulate insurance and thus did not fall within the savings clause. This Court found further support for its conclusion in the fact that the Mississippi tort law was a law of general application which provided a remedy outside ERISA's exclusive remedial provisions.

In Kanne v. Connecticut General Life Ins. Co., 867 F.2d 489 (9th Cir. 1988), the insureds contended that their claim under the California Insurance Unfair Prac-

tices Act (Cal. Ins. Code § 790.03(h)) was not pre-empted pursuant to the decision in *Pilot Life* because, unlike the Mississippi claim in *Pilot Life*, the Kannes' claim was made pursuant to a specific law which regulated insurance. The insureds contended that such claims were "saved" from preemption under the express language of the savings clause.

The Ninth Circuit disagreed, holding that, according to its reading of *Pilot Life*, even if the California Insurance Unfair Practices Act fell within the savings clause, it was nonetheless preempted because it provided a remedy other than those provided under ERISA's statutory remedial provisions. For this decision, the Ninth Circuit relied exclusively on this Court's ruling in *Pilot Life*.

On April 11, 1997, the District Court, relying on *Kanne*, granted UNUM's motion in part and denied the motion in part. It held that Nelson's causes of action for breach of the covenant of good faith and fair dealing and unfair business practices were preempted by ERISA. However, it held that the causes of action for invasion of privacy and negligent and intentional infliction of emotional distress were not preempted to the extent that they were based on the emotional distress claims inflicted as a result of any invasion of privacy and related claims. The District Court held that these claims were too attenuated from the ERISA claim to be swept within ERISA's preemption clause.

In accordance with that order, Nelson filed a First Amended Complaint on May 1, 1997, including a claim to recover benefits under ERISA and re-alleging the state law causes of action for invasion of privacy and negligent and intentional infliction of emotional distress.

On April 20, 1999, this Court issued its decision in *UNUM Life Ins. Co. of America v. Ward*, 119 S.Ct.

1380 (1999). That case clearly stated that the issue which the *Kanne* court and other courts had assumed was resolved in *Pilot Life* was, in fact, still an open question. The *Ward* Court further stated that the Solicitor General, upon whom this Court relies heavily, urged the view that ERISA's remedy provisions do not preempt state laws which fall within the savings clause. It was thus clear that *Kanne's* extrapolation of *Pilot Life's* holding was in conflict with *Ward*.

Accordingly, on June 4, 1999, Nelson moved to amend her complaint to include her state law claim for breach of the covenant of good faith and fair dealing. Nelson contended that *Ward* disputed the fundamental holding of *Kanne* and that, pursuant to *Ward*, her claim for breach of the covenant of good faith and fair dealing now must be considered to lay outside of ERISA's preemptive sweep.

Nelson's argument regarding *Ward's* profound impact upon preemption did not persuade the District Court below. On September 22, 1999, the court denied Nelson's motion to amend. App. 2a. The District Court rejected Nelson's contention that *Ward* had any impact upon the question of whether the California's law of insurance bad faith regulated insurance and therefore was saved from preemption. The District Court also rejected the claim that *Ward* found the question of whether ERISA's remedial provisions were exclusive to be an open one. Instead, it found that *Ward* merely "recalls and approves *Pilot Life's* holding that ERISA displaces state causes of action." App. 6a. It concluded that "courts have consistently interpreted ERISA's text and legislative history as manifesting a Congressional intent to occupy the field of employee benefit plan administration." *Id.*

On October 21, 1999, Nelson filed a petition for writ of mandate with the Ninth Circuit seeking an order directing the trial court to allow her leave to amend to add her

insurance bad faith cause of action in light of *Ward.* On December 20, 1999, the Ninth Circuit denied Nelson's writ petition.

## REASONS THE PETITION SHOULD BE GRANTED

**I. THERE IS A GREAT SPLIT AMONG AND WITHIN THE CIRCUITS REGARDING THE IMPORTANT FEDERAL QUESTION OF THE SCOPE OF ERISA PREEMPTION.**

### A. ERISA Preemption Principles

ERISA is a statute intended to protect employees. Its purpose is to protect employee pension and benefit plans, which were not adequately being protected by employers. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983); 29 U.S.C. § 1001(b). Congress expressly declared a policy of protecting "the continued well-being and security of millions of employees and their dependants." 29 U.S.C. § 1001. ERISA applies to benefits which accrue to an employee pursuant to an employee benefit plan which is established or maintained by an employer with the purpose of providing benefits to its employees. *Shaw, supra,* 463 U.S. at 96-97; 29 U.S.C. § 1002(1). These benefits may include disability benefits provided by the employer through the purchase of insurance.[1]

ERISA contains two provisions pertinent here, the preemption clause and the savings clause. The preemption clause provides that "except as provided in [the savings clause] the provisions of this title . . . shall supersede any and all State laws insofar as they . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a).

The savings clause provides that *"nothing* in this title shall be construed to exempt or relieve any person from any law of *any* State which regulates insurance." 29 U.S.C. § 1144(b)(2)(A) (emphasis added).

---

[1] Nelson received her disability policy in this fashion.

### B. Pilot Life

In *Pilot Life Ins. Co. v. Dedeaux,* 486 U.S. 41 (1987), a disabled insured sought to pursue a Mississippi state law claim for tortious breach of contract. This Court found that the Mississippi law was not a law regulating insurance and thus not within the savings clause. It applied a "common sense approach" and also analyzed the law using the three factors utilized under the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.,* which precludes undue federal influence over state laws which regulate the "business of insurance." Those factors used to determine whether the law regulated the business of insurance are whether the law (1) has the effect of transferring or spreading the policyholder's risk, (2) is integral to the insurer/insured relationship and (3) is limited to the insurance industry.

This Court found that the Mississippi law was not limited to the insurance context but was applicable to all contractual disputes in Mississippi. As such, it did not satisfy the "common sense" approach. This Court also held that the Mississippi law similarly did not satisfy the three McCarran-Ferguson criteria. Therefore, the Court held, the savings clause was inapplicable. *Id.* at 50.

This Court also found that the Mississippi law provided remedies not otherwise available under ERISA. With heavy reliance on the Solicitor General, this Court concluded that, in the context of interpreting the savings clause, the civil enforcement remedies of ERISA were to be considered exclusive and to thereby preclude claims such as those under the Mississippi law.

### C. The Kanne Case

In *Kanne v. Connecticut General Life Ins. Co.,* 867 F.2d 489 (9th Cir. 1988), *cert. denied,* 492 U.S. 906 (1989), an insured made a claim for damages under California's Insurance Unfair Practices Act codified by

California Insurance Code § 790.03(h)². Arguing that the Insurance Unfair Practices Act was clearly a law regulating insurance, the insureds maintained that claims under that act fell within the savings clause and were thus not preempted.

In *Kanne*, the Ninth Circuit assumed, without deciding, that § 790.03 was a law regulating insurance and thus within the savings clause. However, the court held the statute was still preempted by ERISA. This holding was based entirely on the *Kanne* court's interpretation of *Pilot Life*:

> The Kannes' argument asks us to limit *Pilot Life's* preemption holding to only those state laws which do not fall within the savings clause. To accept this argument, however, we would have to ignore the second half of *Pilot Life* . . . in which the Court made abundantly clear that its preemption holding was equally based on its acceptance of the Solicitor General's view that 'Congress clearly expressed an intent that the civil enforcement provision of ERISA § 502(a) be the exclusive vehicle for [actions] asserting improper processing of a claim for benefits.' *Id.* at 494.

Later Ninth Circuit cases which found bad faith claims —saved or not—preempted by ERISA simply cited *Kanne* and *Pilot Life*. *See e.g., Bast v. Prudential Ins. Co. of America,* 150 F.3d 1003, 1007-08 (9th Cir. 1998); *Par-*

² In 1979, the California Supreme Court authorized a private right of action under this insurance code section in *Royal Globe Ins. Co. v. Superior Court,* 23 Cal.3d 880, 886 (1979). Nine years later it overruled *Royal Globe* and held that no private right of action existed. *Moradi-Shalal v. Fireman's Fund Ins. Co.,* 46 Cal.3d 287 (1988). This left the judicially created tort of the covenant of good faith and fair dealing as the only remaining basis to assert tortious bad faith claims against an insurer. It is this tort which Nelson attempts to assert here.

*rino v. FHP, Inc.,* 146 F.3d 699, 704-05 (9th Cir. 1998); *Spain v. Aetna Life Ins. Co.,* 11 F.3d 129, 131 (9th Cir. 1993). Thus, ever since *Kanne,* the Ninth Circuit has concluded that, regardless of whether a tort claim for insurance bad faith is a law regulating insurance, ERISA permits only one remedy. Accordingly, insurance bad faith claims are always preempted.

## D. The Pre-Ward Conflicts: *Kanne* and *Williams*

The Second Circuit expressly considered and rejected the Ninth Circuit's erroneous interpretation of *Pilot Life* in *Franklin H. Williams Trust v. Travelers Ins. Co.,* 50 F.3d 144 (2d Cir. 1995). That court considered a claim for violation of a New York law requiring an insurer to pay interest for life insurance benefits beginning at the date of death. The insurer urged that the law was neither saved, as it did not regulate insurance, nor was it consistent with ERISA's exclusive enforcement scheme.

The *Williams* Court interpreted *Pilot Life* as limited to its facts, namely, that only laws which were not within the savings clause were preempted by the enforcement provision. Finding that the law fell within the savings clause, *Williams* disagreed with *Kanne:*

> It also follows that the district court erred in holding that ERISA's civil enforcement provision, § 1132(a)(1)(B), preempts enforcement of the New York law . . . because such a result would be plausible only if the state law itself were also preempted. It would be quixotic to rule that a claim under a state statute that is saved from ERISA preemption . . . may nonetheless be enforced only via ERISA provisions and remedies. *Id.* at 151.

*Kanne* and *Williams* represent either end of the interpretive spectrum of *Pilot Life's* exclusive enforcement holding. The Fifth, Seventh, Eighth, Tenth and Eleventh Circuits addressing ERISA preemption after *Pilot Life* have come to ambiguous conclusions. In *Anschultz v.*

12

*Connecticut General Life Ins. Co.*, 850 F.2d 1467 (11th Cir. 1988), the Eleventh Circuit noted that "[u]nless [the subject state insurance statute] regulates insurance and is thus subject to the ERISA savings clause of § 514(b) (2) (A), ERISA preempts the state statute." Finding that the statute at issue did not regulate insurance and, thus fell outside the ERISA savings clause, it stated, "[w]e conclude, therefore, that § 624.155 is preempted." *Id.* at 1469. However, the court also rejected the plaintiff's assertion that *Pilot Life* was limited only to common law, as opposed to statutory, claims adding "[w]here otherwise applicable, ERISA preempts all state law. This conclusion is based upon the civil enforcement provisions of ERISA § 502(a)." *Id.*

In *Ramirez v. Inter-Continental Hotels*, 890 F.2d 760 (5th Cir. 1989), the plaintiff sought to assert an unfair insurance practices action under Texas law against his insurer. The court held that the law was one of general application and hence not saved. However the court added that, even if the statute bore a "closer" relationship to the regulation of insurance than the Mississippi law in *Pilot Life* did, "Ramirez, like the plaintiff in *Pilot Life*, seeks to recover, under a state law cause of action, remedies unavailable to him under ERISA. To interpret the savings clause as authorizing such inconsistent state remedies would be to defeat Congressional intent by destroying the exclusivity of ERISA's civil enforcement scheme." *Id.* at 763-64.

Citing *Kanne*, supra, *Anschultz*, supra, and *In Re Life Ins. Co. N. Am.*, 857 F.2d 1190 (8th Cir. 1988), the court stated, "we thus join three of our sister circuits and numerous district courts in holding that ERISA preempts state statutes that provide a private right of action for the improper handling of insurance claims." *Id.* at 764. *See also, Hansen v. Continental Ins. Co.*, 940 F.2d 971, 979 (5th Cir. 1991) (following *Ramirez*).

13

In *In Re Life Ins. Co. N. Am.*, 857 F.2d 1190 (8th Cir. 1988), the plaintiff sought to amend his complaint to assert a "vexatious refusal to pay" claim under Missouri statutory law. The court noted that every court to have considered ERISA's preemptive effect over a state vexatious refusal to pay claim found the state statute preempted. *Id.* at 1194. Without doing an analysis of whether the state statute regulated insurance, the court stated, "[t]he Court in *Pilot Life* could not have stated with any greater clarity that the remedies afforded under ERISA are exclusive, and no state law purporting to supply additional remedies will escape the preemptive effective of § 1144(a) as laws 'which regulate insurance' under § 1144(b) (2) (A)." *Id.*

Yet another court, this time the Tenth Circuit, referred to the exclusive civil enforcement provision in declaring an unsaved law preempted. *Gaylor v. John Hancock Mutual Life Insurance Co.*, 112 F.3d 460 (10th Cir. 1997). After finding that the Oklahoma statutory bad faith law was not saved, the court opined that application of the law would run afoul of the enforcement mechanisms of ERISA. The court stated: "we note that in holding that Mississippi's bad faith law was not saved, the *Pilot Life* Court concluded that the civil enforcement provisions of ERISA § 1132(a) were intended to be [exclusive]." *Id.* at 466.

The Seventh Circuit added its interpretation in *De-Bruyne v. Equitable Life Assurance Society of the United States*, 920 F.2d 457 (7th Cir. 1990). There, the court found that a New York law which provided a panoply of remedies arising out of an insurer's misrepresentations of the terms of its policy was not a law saved from preemption. While the Seventh Circuit reiterated *Pilot Life's* exclusive remedy discussion, it appeared to do so in the context of determining whether the law in question fell

14

within the savings clause and not as an independent basis to find preemption. *Id.* at 468, 470.

Thus, the Ninth Circuit has ruled that laws within the savings clause are nonetheless preempted. The Second Circuit holds that such laws are not preempted and the Fifth, Seventh, Eighth, Tenth and Eleventh Circuits have issued opinions which do not clearly answer the question and have been cited for opposite propositions. *Compare Williams, supra,* 50 F.3d at 150, *with Bonestroo v. Continental Life and Acc. Co.,* 79 F.Supp. 1041, 1052 (N.D. Iowa 1999), *and Optimal Health Care Services, Inc. v. Travelers Ins. Co.,* 791 F.Supp. 163, 164 (E.D.Tex. 1992).

Similar state decisions have multiplied since *Pilot Life. See, e.g., Commercial Life Ins. Co. v. Superior Court,* 47 Cal.3d 473, 483 (1988) ("Our reading of *Pilot Life* accords with that of the Ninth Circuit in *Kanne.*"); *Summers v. U.S. Tobacco Co.,* 214 Ill.App.3d 878 (Ill.App. 1991) (Illinois bad faith law preempted based in part on *Pilot Life's* exclusive civil enforcement scheme.); *Curry v. Cincinnati Equitable Ins. Co.,* 834 S.W.2d 701, 707 (Ky.App. 1992); *Smith v. The Guardian Life Ins. Co.,* 546 So.2d 320, 322 (La. App. 1989); *Villaseas v. CNA Ins. Companies,* 109 Nev. 1975 (1993); *Cathey v. Metropolitan Life Ins. Co.,* 805 S.W.2d 387 (Tex. 1991); *Cf. Commercial Life Ins. Co. v. Superior Court, supra,* 47 Cal.3d at 489 ("the civil enforcement scheme of [ERISA] does not displace the civil enforcement scheme of the state act: the former concerns the rights of employees under covered plans, the latter the duties of insurers under state laws.") (Mosk, J., dissenting.)

As these opinions demonstrate, the pre-*Ward* interpretations of *Pilot Life* have provided unstable and contradictory guidance to the courts across the country which must rely upon them. It was into this morass that this Court's opinion in *Ward* fell. While seeming to indicate

15

that most courts have improperly read *Pilot Life* to conclude that the possibility of alternative remedies in ERISA cases was foreclosed forever, *Ward* expressly left unresolved the preemptive status of laws which regulate insurance. This has only worsened the confusion as the decisions since *Ward,* discussed below, attest.

**E. *Ward* Announced that the Feasibility of Alternative Remedies in ERISA Was An Unsettled Question.**

In *Ward,* the plaintiff's disability claim was denied by the insurer on the ground that it was untimely. The plaintiff contended that California's notice-prejudice rule, which required the insurer to establish prejudice before denying his claim as untimely, should have applied to his claim. The insurer claimed that the notice-prejudice rule did not fall within ERISA's savings clause. Significantly, the insurer also claimed that, even if the law did fall within the savings clause, it provided a remedy which was in conflict with ERISA's civil enforcement scheme. As such, the insurer claimed, *Pilot Life* meant that it was preempted by ERISA.

In a unanimous opinion written by Justice Ginsburg, this Court rejected the insurer's claims, holding that the law was one which regulated insurance and was therefore within the savings clause. This Court, however, found it unnecessary to address the insurer's second contention that ERISA's remedy provisions were exclusive:

UNUM next contends that ERISA's civil enforcement provision, § 502(a) . . . preempts any action for plan benefits brought under state rules such as notice-prejudice. Whatever the merits of UNUM's view of § 502(a)'s preemptive force, the issue is not implicated here. Ward sued under § 502(a)(1)(B) 'to recover benefits due . . . under the terms of his plan.' The notice-prejudice rule supplied the relevant rule of decision for this § 502(a) suit. *The*

16

*case therefore does not raise the question whether § 502(a) provides the sole launching ground for an ERISA enforcement action. Id.* at 1391 (emphasis added).

This Court then further explained at footnote 7 that *Pilot Life* did not answer this specific question:

We discussed this issue [of whether a remedy outside ERISA could co-exist with ERISA's remedy provisions] in *Pilot Life* . . . That case concerned Mississippi common law creating a cause of action for bad faith breach of contract, a law not specifically directed to the insurance industry and therefore not saved from ERISA preemption. In that context, the Solicitor General, for the United States as amicus curiae, urged the exclusivity of § 502(a), ERISA's civil enforcement provision . . . In the instant case, the Solicitor General, for the United States as amicus curiae, has endeavored to qualify the argument advanced in *Pilot Life* . . . [T]he Solicitor General now maintains that the discussion of § 502(a) in *Pilot Life* 'does not in itself require that a state law that "regulates insurance," and so comes within the terms of the savings clause, is nevertheless preempted if it provides a state-law cause of action or remedy.' *Brief* 25; *see also id.,* at 23 ('[T]he insurance savings clause, on its face, saves state law conferring causes of action or affecting remedies that regulate insurance, just as it does state mandated benefits laws.'). We need not address the Solicitor General's current argument, for Ward has sued under § 502(a)(1)(B) for benefits due, and seeks only the application of saved state insurance law as a relevant rule of decision in his § 502(a) action. *Id.* at 1390, n.7.

### F. The Post-*Ward* Conflicts

The above-cited language has increased the confusion among the courts. Some courts have found it significant.

17

Others have found it unimportant. In *Selby v. Principal Mutual Life Ins. Co.,* 2000 WL 178191 (S.D.N.Y. 2000), the Selbys brought an ERISA action and a claim against their insurer for wrongful denial of health benefits under a New York state law prohibiting policy denials for infertility-related conditions. The insurer conceded that the law fell within the savings clause.

The court rejected the insurer's claim that *Pilot Life* required her state claim be preempted. Citing footnote 7 in *Ward, Selby* held that this Court had not resolved the question in *Pilot Life:*

> *Pilot Life,* however, is not on point. Plaintiffs are not suing under a state common law of general application preempted by ERISA; they are suing under a state statute specifically directed towards the insurance industry which defendant concedes is saved from preemption . . . [*Pilot Life*] did not address the distinct question presented here: whether ERISA'S [enforcement provision] preempts a claim based on a state law which regulates insurance within the meaning of ERISA's savings clause. *Id.* at *3.

*Ward's* footnote 7 was again cited for the same proposition in *Hoffman v. Empire Blue Cross,* 1999 WL 782518 (S.D.N.Y. 1999), "It remains an open question whether ERISA preempts causes of action conferred by state laws that regulate insurance." *Id.* at *7 n. 5.[3]

However, when Nelson made the same arguments accepted in *Selby* and *Hoffman* to the District Court in this case, the court read this Court's language entirely differently: "[T]he court finds *Ward's* footnote 7 to be largely irrelevant to the issues presented by this motion,

---

[3] In *Connors v. Maine Medical Center,* 70 F.Supp.2d 40 (D. Me. 1999), the court held that a violation of state law in an ERISA action must be brought separately from the underlying ERISA claim.

18

and indeed to have little substance at all except as a comment upon the Solicitor General's wavering legal positions. . . . Indeed, reading footnote 7 and then reading Plaintiff's analysis of it, the court wonders if it is reading the same footnote Plaintiff is." [4] App. 6a at n.2.

In the Tenth Circuit, the lower court decisions after *Ward* are now in direct conflict with Tenth Circuit pre-*Ward* precedent. As indicated *supra*, *Gaylor v. John Hancock Mutual Life Insurance Co.*, 112 F.3d 460 (10th Cir. 1997), found that Oklahoma's statutory law of bad faith was not saved. *Id.* at 466. However, subsequent Tenth Circuit district courts have rejected the applicability of *Gaylor* in light of *Ward*.

In *Lewis v. Aetna Life Ins. Co.*, 78 F. Supp. 2d 1202 (N.D. Okla. 1999), the court tracks Nelson's argument in the court below nearly point by point. The *Lewis* court allowed the plaintiff to maintain a state cause of action for bad faith because it was saved under the "recently announced" test in *Ward*. *Id.* at 1204. The court concluded that the Oklahoma law of bad faith, which is nearly identical to that of California's, regulated insurance "as that phrase has been defined by the United States Supreme Court in [*Ward*]" and was therefore not preempted. *Id.* Remarkably, *Lewis* expressly rejected the applicability of *Gaylor*, holding instead that *Ward* changed the analysis of what laws "regulate insurance" such that pre-*Ward* Tenth Circuit authority holding that

---

[4] In *Clancy v. Employers Health Ins. Co.*, 1999 WL 1072540 (E.D. La. 1999), the district court also discussed footnote 7, but found it unhelpful and resorted to prior Fifth Circuit authority.

[5] The bad faith claim in Oklahoma is described and defined in *Christian v. American Home Assurance Co.*, 577 P.2d 899 (Okla. 1977), which expressly based it upon two California precedents, *Fletcher v. W. National Life Insurance Co.*, 10 Cal.App.3d 376 (1970), and *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 666 (1973). See discussion in Section III, *supra*.

19

the Oklahoma law was not within the savings clause was no longer applicable. *Id.* at 1205, n.5, 1214, n.9.

Similarly, on November 1, 1999, Chief United States District Judge of the District of Colorado, Richard E. Matsch allowed an insured to assert a cause of action for insurance bad faith against an insurance company under Colorado law pursuant to this Court's decision in *Ward*. *Hall v. Unum Life Ins. Co.*, No. 97-M-1828 (D. Co. Nov. 1, 1999). Like the *Lewis* court, Judge Matsch impliedly held that the pre-*Ward* decision of *Kelley v. Sears, Roebuck & Co.*, 882 F.2d 453, 456 (10th Cir. 1989), finding that the Colorado law of insurance bad faith was not exempt from preemption, was no longer applicable.

It is thus plain that there is enormous conflict and confusion between and within the federal circuits and state courts throughout the country over the question presented here. The fissures among and within the circuits continue to grow, creating inconsistency and disparate results in important benefits litigation. This disparity and disunity of federal law is precisely that which Congress attempted to avoid in passing the savings clause as an integral part of ERISA's preemption provisions and the issues presented here are in dire need of prompt resolution by this Court.

II. **THE ACCURATE SCOPE OF ERISA'S PREEMPTIVE SWEEP IS OF GREAT PUBLIC IMPORTANCE.**

The accurate application of ERISA's preemption clause is of fundamental public importance. As outlined above, since this Court's decision in *Pilot Life*, circuit courts of appeal, including the Ninth Circuit in *Kanne*, and state courts across the country have erroneously extended ERISA preemption to one of the most important state mandated rights upon which many Americans rely: the

20

right to receive fair and good faith handling of their insurance benefits.

The far-reaching expanse of this preemption does not result in mere economic disputes between parties. It cripples peoples' rights to receive benefits for which they paid and upon which their lives depend. As in the instant matter, disability benefits are particularly vital to workers too hurt to work, because they provide a safety net between insureds and indigence. And as in the instant matter, the misguided application of preemption to laws which are expressly within the savings clause allows insurance companies to flout their obligations to individuals who have paid premiums and to flout the will of Congress when it enacted the worker protection provisions of ERISA. And as in the instant matter, despite the fact that disability benefits were the insured's sole source of income, insurance companies face no punitive or deterring sanction when insurance benefits are denied in bad faith to vulnerable individuals who rely on them. Nor may insurers be found responsible for the sometimes devastating damages which may result from the wrongful denial of such benefits. ERISA did not codify this result, Congress did not intend this result, and *Pilot Life* did not authorize this result. However, as long as the question this Court deemed unsettled remains so, it is vulnerable to overbroad and conflicting interpretations across the country, the most restrictive of which is in Nelson's jurisdiction. Only this Court can answer the question so many insureds are clamoring to have heard.

Nelson's conclusions regarding the staggering effects of the scope of ERISA preemption are widely supported by the outpouring of criticism by respected commentators and members of the bench who have decried the enormous abuses which have arisen in the insurance industry since courts interpreted *Pilot Life* to, in essence, provide insurers with immunity from meaningful penalties for wrongful

21

and, at times, egregious denials of insurance claims under ERISA.[6]

One particularly powerful description was written by United States District Judge William Young in *Andrews-Clarke v. Travelers Ins. Co.*, 984 F.Supp. 49 (D. Mass. 1997). In that opinion he explains in detail how the "tragic events set forth in [this] complaint cry out for relief." Describing the result which ERISA dictated as "absurd" and "perverse" the Court said:

ERISA is a 'comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans.' It is therefore deeply troubling that, in the health insurance context, ERISA has evolved into a shield of immunity which thwarts the legitimate claims of the very people it was designed to protect. What went wrong? *Id.* at 56.

In *Dishman v. UNUM Life Ins. Co.*, 1997 WL 906146 (C.D. Cal), District Judge Letts declared the following with regard to the same defendant which is before this Court:

[T]he facts of this case are so disturbing that they call into question the merits of the expansive scope of ERISA preemption. [The insurer's] unscrupulous conduct in this action may be closer to the norm of insurance company practice than the court has previously suspected. This case reveals that for benefit plans funded and administered by insurance com-

6 *See e.g.*, Stephen S. Ashley, *Did UNUM Life Insurance Co. of America v. Ward Overrule Pilot Life Insurance Co. v. Dedeaux?* BAD FAITH LAW REPORT, vol. XV, No. 9, p. 185. Professor Ashley concludes that the Court did not "overrule" *Pilot Life*, however, he does assert that *Ward* "does cast doubt on the future viability of the comprehensive civil enforcement scheme leg of the *Pilot Life* holding. . . . It is a pity the Court did not use the opportunity in [*Ward*] to speak more directly to the merits of the comprehensive civil enforcement scheme reasoning in *Pilot Life*."

panies, there is no practical or legal deterrent to unscrupulous claims practices. *Id.* at *11.*12.

In *Patrick v. UNUM Life Insurance Co.,* 23 Employee Benefits Cas. 1691, 1696, California Superior Court Judge John G. Schwartz described UNUM's conduct as follows: "This Court must observe that this case is disturbingly similar to *Dishman v. UNUM Life Insurance Co.* [Citation omitted.] Both this case and *Dishman* demonstrate actions by the Defendant which could only be termed bad faith under state law." Judge Schwartz further stated that the court "[is led] to the conclusion that these practices constitute a deliberate corporate policy which has continued despite the condemnation of *Dishman*." He nonetheless concluded that he was powerless to correct such abuses, stating, "[f]or reasons best known to Congress, ERISA insulates the insurance carriers from financial punishment for even the most egregious conduct." *Id. See also, Bast v. Prudential Ins. Co. of America,* 150 F.3d 1003 (9th Cir. 1998); *Cannon v. Group Health Serv.,* 77 F.3d 1270, 1271 (10th Cir. 1996), *cert. denied,* 519 U.S. 816 (1966).

Further, this petition for certiorari presents the precise argument which the United States Solicitor General presented in *Ward.* Indeed, the position of the Solicitor General is the very position which Nelson urges here which has heretofore been erroneously foreclosed by *Kanne* and other cases.

III. ERISA DOES NOT PREEMPT AN INSURANCE BAD FAITH ACTION IN CALIFORNIA.

The District Court below, as well as the Ninth Circuit, was erroneous not only in the failure to recognize the conflict presented by *Ward* regarding the availability of alternative remedies for benefits violations, but also in finding that California's tort of insurance bad faith was not a law regulating insurance. State law authorities

clearly establish that California's law is one which regulates insurance. Because state law precedents, particularly in light of the clarification of the "common sense" and McCarran-Ferguson tests articulated in *Ward,* establish that the California law meets the test as one falling within ERISA's savings clause, this Court should find that it is not preempted.

A. California's Insurance Bad Faith Law Falls Within the Savings Clause.

A tort cause of action for insurance bad faith is a judicially created claim which is well established in California law. *Foley v. Interactive Data Corporation,* 47 Cal.3d 654 (1988); *Egan v. Mutual of Omaha Ins. Co.,* Cal.3d 809 (1979), *cert. denied,* 445 U.S. 912 (1980); *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566 (1973); *Crici v. Security Ins. Co.,* 66 Cal.3d 425 (1967). The tort arose out of public policy concerns reflecting the importance of insurance in our society and the need for the protection of vulnerable insureds against abusive actions by far more powerful insurers.[7] In *Foley, supra,* 47 Cal.3d at 684, the California Supreme Court explained the public policy considerations which underlie the tort of insurance bad faith. It also made clear that this tortious remedy is limited solely and exclusively to insurance claims:

An exception to [the] general rule [limiting compensation for breach of the implied covenant to contract remedies] has developed in the context of insurance contracts where, for a variety of policy reasons, courts have held that breach of the implied covenant will provide the basis for an action in tort.

_____
[7] This case serves as a perfect example of this abuse. Notwithstanding Nelson's catastrophic injuries and her obvious, meticulously documented disability, UNUM (believing it had immunity from unconscionable claims decisions) claims that it was entitled to terminate Nelson's sole source of income because she did not respond to one of its letters in a timely fashion.

24

California has a well-developed judicial history addressing this exception.

Similarly, in *Egan v. Mutual of Omaha Ins. Co., supra,* 24 Cal.3d at 819, the court described the rationale behind excepting insurance bad faith actions from the usual prohibition for tort remedies, specifying several factors unique to the insurance industry. Notably, the court said that an insured does not seek to gain an *advantage* in purchasing insurance, but "rather, he seeks protection against calamity." *Id.* The Egan court noted the "quasi-public" nature of the service offered by insurers, requiring insurers to prioritize the interests of the public over their own interest in lowering disbursements. *Id.* at 820. Finally, the Egan court emphasized that "the relationship of insurer and insured is inherently unbalanced: the adhesive nature of insurance contracts places the insurer in a superior bargaining position." *Id.* These considerations led the California Supreme Court to conclude that "[t]he special relationship between the insurer and the insured illustrates the public policy considerations that may support exemplary damages in cases such as this." *Id.*

These principles were recently reaffirmed in *Cates Construction Inc. v. Talbot Partners,* 86 Cal.Rptr.2d 855 (1999). *Cates* held that "[a]t present, this court recognizes only one exception to that general rule [that compensation for breach of the implied covenant of good faith and fair dealing is limited to contract rather than tort remedies]: tort remedies are available for a breach of the covenant in cases involving insurance policies." *Id.* at 865.

The analysis of whether California insurance bad faith law is saved from ERISA's preemptive ambit mirrors that performed by the *Ward* Court in interpreting the notice-prejudice rule. The *Ward* Court explained that California's notice-prejudice rule (like bad faith) is "grounded in policy concerns specific to the insurance industry. . . ."

25

The grounding is the key to our decision." *Ward, supra,* 119 S.Ct. at 1388. A long line of California cases exemplified by *Foley, Egan* and *Cates* demonstrate that California's insurance bad faith law satisfies the definition in *Ward.* With respect to the "common-sense" test, the cause of action for insurance bad faith is grounded in policy concerns specific to the insurance industry in the exact same manner as the notice-prejudice rule. *Foley, supra,* 47 Cal.3d at 684; *Cates, supra,* 21 Cal.4th at 45.

California's insurance bad faith law also satisfies the McCarran-Ferguson three-factor analysis in precisely the same way that the notice-prejudice rule does. Insurance bad faith claims affect the first factor, risk spreading—which the *Ward* Court did not even consider—no less than the notice-prejudice rule. Indeed, insurers regularly argue that permitting insurance bad faith claims will increase the payments required of them and accordingly the premiums charged. As for the remaining factors, the implied covenant of good faith and fair dealing could not be more integral to the relationship between the insured and the insurer because it pervades the entire claims process. Indeed, it applies to all insurance claims, whereas the notice-prejudice rule only applies to a very small percentage of claims. While the notice-prejudice rule requires the insurer to prove actual prejudice before denying a claim as untimely, the covenant of good faith and fair dealing requires much more:

For the insurer to fulfill its obligation not to impair the right of the insured to receive the benefits of the agreement, it . . . must give at least as much consideration to the [insured's] interest as it does to its own . . . [I]t is essential that an insurer fully inquire into possible bases that might support the insured's claim . . . [A]n insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial. *Egan, supra,* 24 Cal.3d at 818-19.

26

Finally, there is no question that under *Foley*, *Egan* and *Cates*, insurance bad faith claims are limited to the insurance industry. Again, the insurance bad faith law "does not merely have an impact on the insurance industry, it is aimed at it." *Ward*, *supra*, 119 S.Ct. at 1390.[8]

**B. ERISA Does Not Provide the Sole Remedy for Claims of Unlawful Insurance Practices and Does Not Preempt Laws Which "Regulate Insurance" as Does California's Insurance Bad Faith Law.**

ERISA provides that "*nothing* in [ERISA] shall be construed to exempt or relieve *any* person from *any* law of any State which regulates insurance." 29 U.S.C. § 1144 (emphasis added). The result in *Kanne* and similar decisions effectively eviscerates the savings clause. While the substantive state law may be expressly saved from exemption under the language of ERISA, the exemption is effectively meaningless as a violation of the state law cannot be enforced or remedied under *Kanne's* erroneous and overbroad interpretation of the second half of *Pilot Life*.

---

[8] The Court below erroneously found that the third McCarran-Ferguson factor requiring a saved law to be aimed exclusively at the insurance industry was not met because "courts have consistently acknowledged that there is room, even if exceedingly small, for this doctrine in other contexts which simply have not yet come before the courts." App. 4n. Yet, the tort of bad faith has been in existence now for over 30 years. *See Gruenberg*, *supra*, 9 Cal.3d at 573. To find that the third McCarran-Ferguson guideline is not met because there is some theoretical room for its application, however miniscule, outside the insurance context, simply does not comport with the standard for weighing the factors. As the Court made clear in *Ward*, evaluation of the McCarran-Ferguson factors are only "checking points or 'guideposts', not separate essential elements . . . that must be satisfied." *Id.* at 1389.

Moreover, the Court below also acknowledged that it "would tend to agree that a covenant requiring that the parties act in good faith would be integral to the relationship but it feels bound by the Ninth Circuit's holding in *Kanne* that bad faith law does not 'concern the policy relationship'." App. 5a at n1. Unfortunately, *Kanne* did not make such a finding.

27

As the primary source of insurance for many Americans, workplace benefits enforceable by laws which regulate insurance were expressly set aside from ERISA's preemptive scope. To deny these insureds the right to pursue the violation of those saved laws deprives them of the effective protection for which insurance was established, and denies the states the ability to protect their citizens from these potentially devastating breaches.

This is not what Congress intended. As this Court recognized in *Ward*, the discussion in *Pilot Life* regarding the exclusivity of ERISA's remedies was made in the context of interpreting the savings clause. "Because in this case, the state cause of action seeks remedies for the improper processing of a claim for benefits under an ERISA-regulated plan, *our understanding of the saving clause* must be informed by the legislative intent concerning the civil enforcement provisions provided by ERISA § 502(a), 29 U.S.C. § 1132(a)." *Pilot Life*, *supra*, 481 U.S. at 1555 (emphasis added).

The Solicitor General, upon whom this Court places great reliance, urged in his brief in *Ward* that state laws providing remedies which are an alternative to ERISA's remedies not only may co-exist with each other but, in fact, were intended to by Congress. The Government's brief in *Ward* indicated that ERISA does preempt "generally applicable state-law remedies" relating to ERISA plans. It continued to underscore that "[i]t does not follow, however, that ERISA Section 502 should inform the inquiry to the same extent with respect to a state-law cause of action or remedy that specifically 'regulates insurance' as it does with respect to one of general applicability." 1998 WL 839957, at *21-*22.

The Solicitor General questioned why Congress would have carefully exempted substantive state law, and then foreclosed access to state enforcement mechanisms to

28

remedy those substantive state law violations. The brief further explained:

. . . Congress has saved state substantive law, and it is not clear why Congress would have wanted to foreclose all access to state-created remedies or sanctions to enforce that substantive law . . . [T]he savings clause by its terms directs that nothing in Section 502, which concerns causes of action and remedies under ERISA shall be 'construed to relieve or exempt any person from "any law" of a State that regulates insurance. Thus, the insurance savings clause, on its face, saves state law conferring causes of action or affecting remedies that regulate insurance, just as it does state mandated-benefit laws and other prescriptive measures that do so. *Id.* at *22-*23.

Clearly, the savings clause and the civil enforcement provision may be interpreted harmoniously under the limited holding in *Pilot Life*. This conclusion is bolstered by this Court's recent "reverse preemption" decision in *Humana Inc. v. Forsyth et al.,* 119 S.Ct. 710 (1999). There, the petitioner sought to assert a federal claim against an insurance company under RICO alleging a pattern of racketeering activity. The insurer moved to dismiss the RICO claim on the ground that it was precluded by the McCarran-Ferguson Act, which prohibits the application of federal statutes which would "invalidate, impair or supersede" state laws regulating the business of insurance. The insurer claimed that, because RICO provided for remedies unavailable under state law, this "impaired" the state's insurance laws and thus was prohibited.

This Court concluded that RICO claims were not precluded by the McCarran-Ferguson Act. It specifically found that "a federal law which proscribes the same conduct as state law, but provides materially different remedies [does not] 'impair' state law under . . . McCarran-

29

Ferguson." *Id.* at 715. Just as the federal RICO remedies do not impair the states' insurance laws, the states' insurance remedies do not impair the federal ERISA law. This is particularly so given that ERISA specifically contemplates that state insurance laws will be permitted to remain outside ERISA and that "nothing" in ERISA will affect "any" of those laws.

In addition, previous Supreme Court cases foreshadowed and further support this analysis. In *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724 (1985), the Court held that a state law mandating insurance benefits was a law which regulated the business of insurance and was saved from preemption by ERISA's savings clause. See also, *New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645 (1995); *De Buono v. NYSA-ILA Medical and Clinical Services Fund,* 520 U.S. 806 (1997).

In *California Division of Labor Standards Enforcement v. Dillingham Construction N.A., Inc.,* 519 U.S. 316 (1997), the Court held that a state law neither made "reference to" nor had "connection with" ERISA plans and therefore did not "relate to" ERISA plans and was not preempted. The concurring opinion by Justices Scalia and Ginsburg observed that the ERISA preemption criteria set forth in some of the court's earlier cases, including *Pilot Life,* have "in effect been abandoned" as "a project doomed to failure". *Id.* at 335 (Scalia, J., concurring).

*FMC Corp. v. Holliday,* 498 U.S. 52 (1990), has been interpreted to stand for the proposition that Congress, by treating insured plans differently than uninsured plans, the latter not being deemed the business of insurance, intended that ERISA reserve to the states the direct regulation of insurers as well as the substantive terms of insurance contracts. *See, International Resources, Inc. v. New York Life Ins. Co.,* 950 F.2d 294, 401 (6th Cir. 1992).

30

Unquestionably, ERISA, a law primarily intended to protect employees, was not intended to wreak harm on its beneficiaries. Indeed, Nelson asserts that the actions of the insurer before this Court, and in innumerable similar circumstances, are a reflection of what happens when a powerful insurer obtains immunity from suit under state law regulating insurance by a vulnerable citizen whose life and well-being has been entrusted to it. Such conduct is subject to state laws regulating insurance, not ERISA.

Certainly, this is the very concern that led Congress, consistent with the McCarran-Ferguson Act, to include the savings clause within ERISA, thereby permitting states to assure the proper handling of insurance claims through the application of appropriate remedial state insurance laws.

## CONCLUSION

For the foregoing reasons, Nelson respectfully urges the Court to grant a writ of certiorari in this case.

Respectfully submitted,

ARNOLD R. LEVINSON
*Counsel of Record*
REBECCA GREY
PILLSBURY & LEVINSON, LLP
One Embarcadero Center
38th Floor
San Francisco, CA 94111
(415) 433-8000
*Attorneys for Petitioner
Kris Nelson*

*On the Brief:*
DOUGLAS K. DEVRIES
MART & DEVRIES
721 Ninth Street
Suite 300
Sacramento, CA 95813
(916) 441-7394

WILLIAM S. SHERNOFF
MICHAEL J. BIDART
JEFFREY ISAAC EHRLICH
SHERNOFF, BIDART,
   DARRAS & DILLON
600 S. Indian Hill Blvd.
Claremont, CA 91711
(909) 621-4985

March 10, 2000

# APPENDICES