IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RYAN HILL, }
 }
    Plaintiff, }
 }
v. } CIVIL ACTION NO.
 }
 } 00-AR-1590-S
BLUE CROSS BLUE SHIELD OF }
ALABAMA, }
 }
    Defendant. }

**ENTERED OCT 10 2000**

## MEMORANDUM OPINION

On July 24, 2000, this court, reluctantly and with expressed ambivalence, denied the motion of plaintiff, Ryan Hill ("Mr. Hill"), to remand the above-entitled case to the Circuit Court of Jefferson County, Alabama, from whence it had been removed by defendant, Blue Cross Blue Shield of Alabama ("Blue Cross"). This court simultaneously certified the question of its jurisdiction for interlocutory review pursuant to 28 U.S.C. §1292(b). The Eleventh Circuit declined to accept the proffered appeal, whereupon Mr. Hill asked this court to take another look at the question of its subject matter jurisdiction. Upon reconsideration, the court changes its mind and will remand the case pursuant to 28 U.S.C. §1447(c).

The question of removal jurisdiction cannot be answered until a prefatory jurisprudential question is answered, namely, whether *Amos v. Blue Cross Blue Shield of Alabama*, 868 F.2d 430 (11th Cir.1989), is still binding precedent in the Eleventh Circuit or

has been superceded by subsequent Supreme Court precedent.  *Amos* is similar to the instant case in several material respects.  Both cases were brought against an insurer relying solely upon state law theories.  Neither the *Amos* complaint nor the *Hill* complaint invoked the Employee Retirement Security Act of 1974 (29 U.S.C §§ 1001, et seq.) ("ERISA"), although the insurance policy issued by Blue Cross in each instance was part of an employee benefit plan covered by ERISA.  Mr. Amos sought money damages both for Blue Cross's alleged fraud and for its alleged bad faith refusal to pay him what he claimed were benefits due him under the terms of the policy.  Mr. Hill here alleges only the Alabama tort of bad faith.  In *Amos*, the Eleventh Circuit found that both Alabama theories of liability had been preempted by ERISA and, thus, were wiped out entirely.  In the last paragraph of *Amos*, the Eleventh Circuit said:

> We acknowledge that by eliminating the possibility that insurance companies may be liable for punitive or extra-contractual damages, the courts are removing an historical disincentive to insurance company misbehavior.  Consequently, our decision may produce unintended results.  **However, any change in the law's course will have to be charted by the Congress or the Supreme Court**.

*Amos*, 868 F.2d at 433 (emphasis supplied).

Although Congress has considered and is still contemplating amendments to conform ERISA to its originally avowed purposes, Congress has done nothing substantive since 1989, when *Amos* was decided, to allay the concerns voiced by the Eleventh Circuit in

2

*Amos*, and reiterated in Judge Birch's dissent in *Sanson v. General Motors Corp.*, 966 F.2d 618, 623 (11th Cir.1992), as follows:

> At the outset I must acknowledge that the direction of decision in the courts, particularly in the wake of *Ingersoll-Rand Co. v. McClendon,* --- U.S. ----, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), favors a finding of preemption. However, given the acknowledged, underlying purpose of ERISA to protect employees and beneficiaries in employee benefit plans, this case represents the point at which the preemption tide should be stayed. A finding of preemption in this case not only fails to further any such protective policy, it conceivably offers an unscrupulous employer a method of avoiding employee benefit "burdens." An employer in this circuit can now hoodwink a long time employee and leave him stranded without any recourse whatsoever. This result stands the entire statutory scheme on its proverbial head.

(internal footnotes omitted).

With nothing from Congress, this court is left with the Supreme Court as the only place to look to see if the "law's course has been re-charted" (to borrow a phrase from *Amos*).

It is, of course, well settled that "[w]here precedent binding upon this court [the Eleventh Circuit] cannot be reconciled with a subsequent Supreme Court decision, we must defer to the Supreme Court". *In re Employment Discrimination Litigation*, 198 F.3d 1305, 1319 (11th Cir.1999), citing *Cottrell v. Caldwell*, 85 F.3d 1480, 1485 (11th Cir.1996), and *United States v. Shenberg*, 89 F.3d 1461, 1480 & n.23 (11th Cir.1996). The most recent Eleventh Circuit pronouncement on this subject is found in *In re Provenzano,* 215 F.3d 1233, 1235 (11th Cir.2000), where the court said:

> Under our prior panel precedent rule, *see United States v. Steele*, 147 F.3d 1316, 1317-18 (11th

3

>Cir.1998) (en banc), we are bound to follow the *Medina* decision. We would, of course, not only be authorized but also required to depart from *Medina* if an intervening Supreme Court decision actually overruled or conflicted with it.

After Mr. Hill filed his motion for reconsideration, this court more thoroughly studied the jurisdictional question arising from ERISA, and has conducted a serious debate with itself on the subject. The court now reaches the conclusion that the Supreme Court has, since *Amos*, charted a course under which Mr. Hill can proceed with his state law claim in the forum which he chose. That new course was charted in *UNUM Life Insurance Company v. Ward*, 526 U.S. 358, 119 S.Ct. 1380 (1999), in which the Supreme Court eliminated the previously existing doubt about the congressional intent in ERISA's so-called "savings clause", 29 U.S.C. §1144(b)(2)(A). This provision reads in pertinent part:

>**[N]othing in this sub-chapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance ...**

(emphasis supplied).

In *Ward*, a unanimous Supreme Court continued to recognize that ERISA preempts or supercedes state laws that "relate to any employee benefit plan"; but it just as fully and categorically recognized, and did not soft pedal, ERISA's express statutory exception that allows the enforcement of state laws, whether statutory or judge-made, when they **regulate insurance**. In *Ward*, the court looked at the court-created rule in California providing

4

that a notice of claim that is late must cause substantial prejudice to the insurer before that lateness can be interposed by the insurer as a defense to the claim. It found that the rule was **saved** by § 1144(b)(2)(A), because it constituted a regulation of insurance.

Two footnotes in the unanimous *Ward* decision reveal the Supreme Court's thinking about § 1144(b)(2)(A). The language used by the unanimous court in these footnotes does not tax the powers of comprehension or of deduction. The language is direct and straightforward. It speaks for itself, especially in the light of the Supreme Court's concurrent admonition that readers of ERISA should "take a common sense view of the matter". 119 S.Ct. at 1386.

Footnote 6 reads as follows:

> We recognize that applying the States' varying insurance regulations creates disuniformities for "national plans that enter into local markets to purchase insurance." *Metropolitan Life*, 471 U.S., at 747, 105 S.Ct. 2380. As we have observed, however, "[s]uch disuniformities ... are the inevitable result of the congressional decision to 'save' local insurance regulation." *Ibid*.

119 S.Ct. at 1390.

Footnote 7 follows hard upon footnote 6. It reads in pertinent part:

> We discussed this issue in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). **That case concerned Mississippi common law creating a cause of action for bad faith breach of contract, law not specifically directed to the**

5

> insurance industry and therefore not saved from ERISA preemption.

119 S.Ct. at 1390 (emphasis supplied).

There is no way to read footnotes 6 and 7 in tandem except as an acknowledgment by the highest court that if Mississippi's cause of action for bad faith breach of an obligation to pay had been allowable only as to insurance policies, the action addressed in *Pilot Life* would have been saved from ERISA preemption by §1144(b)(2)(A). Although there are some district courts which disagree with this court's reading of *Ward*, this court finds nothing fuzzy or ambiguous about what the *Ward* court was saying. Surely, at least one justice out of nine would have balked if he or she had detected any need to back off from what Justice Ginsburg clearly wrote for the whole court.

To this court, the only question that remains is whether Alabama's cause of action for bad faith is limited to the insurance industry. This question is answered quickly in the affirmative by *American Cast Iron Pipe Co. v. Williams*, 591 So.2d 854, 857 (Ala.1991), where the Supreme Court of Alabama held: "[W]e have consistently refused to extend to the area of general contract law the tort of bad faith that we have recognized in the context of insurance policy cases". This holding is consistent with the fact that Alabama codified its common law tort of bad faith when it passed the Alabama Insurance Trade Practices Act, part of which is found at *Ala. Code §27-12-24*, within the "insurance" title of the

6

Code. The Supreme Court of Alabama has said absolutely nothing to suggest that a self-insured employer can be sued for bad faith by its employee-beneficiary, as if it were an insurance company. In other words, the only targets for the tort of bad faith in Alabama are insurance companies.

The essential elements of the tort of bad faith in Alabama are, of course, very hard to prove, but the public policy represented by this unique tort, one that exposes insurance companies to the possibility of having to pay punitive and/or extracontractual damages if they knowingly or maliciously refuse to pay a perfectly legitimate insurance claim, has a salutary affect. This is the very kind of ameliorating insurance **regulation** that some courts, including this one, have longed for since ERISA preemption came on the scene.

This court is not a pioneer. Other courts have preceded it in finding that a state law tort claim of bad faith is exempt from ERISA preemption if limited to the insurance industry. Judge Holmes of the Northern District of Oklahoma in *Lewis v. Aetna U.S. Healthcare*, 78 F.Supp.2d 1202(N.D. Okla.1999), said exactly what this court is saying. So did Chief Judge Matsch of the District of Colorado in *Hall v. UNUM Life Insurance Company*, CV-97-M-1828 (Nov. 1, 1999, unpublished). The laws of Oklahoma and Colorado, like the law of Alabama, limit the tort of bad faith to insurance. From *Pilot Life*, it was obvious that the law of Mississippi did not.

7

In a recent ERISA case arising in New York, the plaintiff invoked a state statute in suing an ERISA fiduciary. Judge Carter of the Southern District of New York employed the same principles employed by Judges Holmes and Matsch, by the Supreme Court in *Ward*, and by this court, finding that a claim based on state law is saved when that law is part of the state's insurance regulating scheme. *Selby v. Principal Mutual Life Insurance Company*, 2000 WL 178191 (S.D.N.Y. 2000). As far as the "savings clause" is concerned, there is no distinction between statutory and judge-made law.

In comparing *Ward* and *Amos,* the conflict between the two is apparent, but there are other things that should be said. First, there was no reason for the *Amos* court to know that *Ward* would come along ten years later, even though it hoped for something like *Ward*. Second, the *Amos* court was not asked to address and did not address the "savings clause" issue. The only issue in *Amos* was whether ERISA preempted two separate and distinct claims brought under state law. Mr. Amos never contended that either of his claims was saved from preemption by §1144(b)(2)(A). Third, *Ward* does not conflict with *Amos* insofar as a state law fraud claim is concerned. Alabama has never limited its actions for fraud to insurance companies. Such claims do not and cannot constitute a "regulation of insurance" under the *Ward* analysis, even though they, like bad faith claims, might act as a brake on nefarious insurance practices. Thus, if *Amos* were decided today, the

Eleventh Circuit, even if asked to do so, would have no reason to find Mr. Amos' fraud claim saved by §1144(b)(2)(A).

The door of opportunity for an insured to proceed under state law while avoiding the effect of ERISA preemption has only been slightly cracked by the unanimous Supreme Court in *Ward*, and only in those states which recognize the circumscribed tort of bad faith refusal to honor an insurance contract. Finding no reason to believe that *Amos* has survived *Ward* in cases of alleged bad faith refusal to pay insurance benefits in Alabama, it follows that this court lacks subject matter jurisdiction in this case. There being no federal question, no complete diversity, and no other basis for removal jurisdiction in this court, the court will grant Mr. Hill's motion to remand by separate order.

DONE this 10th day of October, 2000.

/s/ William M. Acker
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE